Harriet J. Stephenson v. Bankers Life Association,
of Des Moines, Iowa, Appellant.

| 108 | 637 |
|-----|-----|
| 109 | 524 |
| 108 | 637 |
| 127 | 30 |

| 108 | 637 |
|-----|-----|
| f132 | 71 |
| f132 | 560 |

| 108 | 637 |
|-----|-----|
| 134 | 580 |

| 108 | 637 |
|-----|-----|
| f139 | 446 |

| 108 | 637 |
|-----|-----|
| 143 | 550 |
| f143 | 552 |

**Suicide:** PRESUMPTIONS: *Evidence.* The presumption is that a killing
was accidental, and not suicidal, where the evidence is circum-
stantial and compatible with either theory.

SAME. In an action on an insurance policy, where the defense was
suicide, the evidence disclosed that defendant was found dead in
a barn on his own premises; that he had, with the consent of the
physician in charge, just returned home from an insane asylum,
in company with his brother-in-law; that on his way home he
procured a revolver, with the avowed purpose of shooting the
sheriff if he attempted to return him to the asylum; that on his
arrival at home he seemed glad to meet his family; that he
picked up and kissed his babe; that when he reached his home he
and his brother-in-law started to go into the house, the latter sup-
posing deceased was following him, and just as he arrived at the
door, a pistol-shot was heard in the barn; that the deceased was
found lying on his back with his right hand grasping the revolver
drawn up over his breast, and his left arm extended along his
left side, with a bullet hole in the center of his forehead; that there
was no laceration, and but slight, if any, powder marks about the
wound; that the revolver was probably not held close to the head;
and that, if the body had been raised it would face the left side of
the barn, about eighteen inches from the door by which he had
entered; and that he at no time threatened to commit suicide.
*Held,* that such evidence did not overcome the presumption that
death was accidental,

**Proof of Loss:** SUFFICIENCY. An affidavit of the undertaker who
buried insured, which sets forth that he buried insured, and that
insured died on a certain day, to his positive knowledge, is not
such proof of death as is contemplated by Acts Eighteenth General
General Assembly, chapter 211, section 3, which provides that the
beneficiary shall, within sixty days after death notify the com-
pany of the death of the insured, which notice shall be accompa-
nied by an affidavit of the beneficiary stating, so far as lies within
his knowledge, the facts and circumstances under which the death
of the insured occurred.

**Pleading:** WAIVER. *Proof of loss.* It is not necessary to state that facts are pleaded for the purpose of showing a waiver or estoppel, as, if they are sufficient, they will be given that effect.

SAME. A plaintiff may, in an action on an insurance policy, plead both a waiver of proof of death by defendant and the giving of proof by plaintiff.

EVIDENCE OF WAIVER. The beneficiary in an insurance policy notified the insurance company in writing of the death of insured, and inquired of the company whether it had received proofs of death, and, if so, requested the company to send suitable blanks. The company stated in answer that it had previously written to one B. concerning the death of insured, and inclosed a copy of the letter. The company denied all liability, on the ground that the insured had taken his own life, and refused to furnish blanks, lest by doing so it might be held to have admitted the claim. The beneficiary sent the company what purported to be proofs of death, and stated that, if further proofs were required, they would be furnished on application. The company retained such proofs without objection and never asked for further proof. The company also wrote the beneficiary that they had examined into the matter, and learned beyond any doubt that insured had taken his own life, and that they were not liable. *Held,* that the company had waived proof of death.

**Surrender of Policy:** CONDITION PRECEDENT. In an action on a policy which provides that the insurance shall be paid on presentation of the policy, with satisfactory proof of death, it is not necessary to show a tender of the policy before the commencement of the suit.

*Appeal from Kossuth District Court.*—HON. LOT THOMAS, Judge.

THURSDAY, MAY 25, 1899.

ACTION at law upon a certificate of membership in the defendant association. Defendant pleaded that the assured, Louis E. Stephenson, committed suicide, and further claimed that no sufficient proofs of death were furnished within the time required by law and the terms of the certificate. There was a trial to a jury, resulting in a verdict and judgment for plaintiff, and defendant appeals.—*Affirmed.*

*Ayres, Woodin & Ayres,* and *Geo. E. Clark* for appellant.

*E. V. Swetting* and *A. E. Morling* for appellee.

DEEMER, J.—December 26, 1895, the defendant issued a certificate of membership to Louis E. Stephenson, by the terms of which it agreed to pay plaintiff, his beneficiary, two thousand dollars, in the event of the death of the assured during the life of the certificate. One of the conditions on which it was issued was that the certificate should be null and void if death occurred from self-destruction within two years from its date, whether the member was sane or insane at the time he took his own life. On the twenty-second day of September, 1896, the deceased was found dead in a barn upon his own premises. The evidence tends to show that he had been in an insane asylum for some time just prior to his death. His brother-in-law went after him, and, with the consent of the physician in charge, brought him home from that institution. When he returned, he seemed to be better than when he was taken to the asylum. Shortly after his arrival at home he procured a revolver which had been left at the house of his brother-in-law, with the avowed purpose of preventing the sheriff from returning him to the asylum; declaring that he would shoot that officer if he should undertake to return him to the hospital. When he reached home he seemed very glad to meet his family, and displayed considerable interest in his home and surroundings. He picked up his little babe, kissed it, and seemed to have the usual parental affection for his offspring. After procuring the revolver he started for home, accompanied by his brother-in-law, who attempted, without avail, to secure the revolver; and, having reached home, both parties started to go into the house. The brother-in-law went around to the front door to tell the wife of the assured that he had a revolver, supposing that the assured was following him. Just as the brother-in-law arrived at the door and had communicated the fact of the assured's having a revolver, a pistol shot was heard in the direction of the barn, which was but a short distance from the house. Shortly thereafter

various parties went to the barn, and there found the assured. He was lying on his back, his body extended. His right hand, which grasped the revolver, was "kind of drawn up over his breast," and his left hand and arm were extended along his left side. A bullet wound was found near the center of the forehead, the ball ranging upward. There were very slight powder marks, if any, about the wound, and there was no laceration. It was a clear cut. If the body had been raised to its feet from the recumbent position in which it was found, it would face the left-hand side of the barn, about eighteen inches or two feet from the door by which it had entered. The bullet wound was fatal. The doctor who examined the deceased shortly after his death testified that there were no powder marks, and that the discoloration of the wound looked as if it might have been made by the smoke or dirt off of the bullet, rather than by the smoke from the gun; and he further testified that the revolver was not held close against the head. This was practically all the evidence relating to the manner and cause of death.

On the one hand it is contended that this evidence clearly shows self-destruction, while on the other hand it is said that the evidence points to the theory of accident. The trial court instructed to the effect that the presumption was that the killing was accidental, and that the burden was on the defendant to show that the assured committed suicide. While some complaints are lodged against the instructions, they are largely hypercritical and without substantial merit. They announce the law as established by almost the entire current of authority, and are clear, comprehensive, and easily understood. See *Inghram v. National Union*, 103 Iowa, 395; *Hale v. Investment Co.*, 61 Minn. 516 (63 N. W. Rep. 1108); *Insurance Co. v. Nitterhouse*, 11 Ind. App. 155 (38 N. E. Rep. 1110); *Beckett v. Association*, 67 Minn. 298 (69 N. W. Rep. 923); *Jones v. Association*, 92 Iowa, 652; *Follis v. Association*, 94 Iowa, 439; *Insurance*

*Co. v. McConkey,* 127 U. S. 661 (8 Sup. Ct. Rep. 1360).
Again, it is contended that the evidence shows without dis-
pute that the deceased committed suicide. As we have already
observed, there is a presumption in favor of the theory of
accident. This presumption has the effect of affirmative evi-
dence, and, unless so negatived by the surrounding facts and
circumstances as to leave room for no other reasonable
hypothesis than that of suicide, such presumption will be
allowed to prevail, and a verdict founded thereon will not
be set aside for want of evidence. Some facts are disclosed
by the record in aid of this presumption. It is evident that
the revolver was not held against the head, as is usual in
cases of suicide. The position of the body and the direction
of the wound also give color to the claim of accident. Again,
there is no evidence tending to show a desire or purpose on
the part of the deceased to take his own life. Indeed, he
seemed to be so in love with his home and family as to
threaten the life of the one who he feared might remove him
from them. He seemed to be on affectionate terms with all
the members of his family, and at no time threatened to take
his own life. While some of the circumstances point
towards self-destruction, yet we cannot say that the
evidence is sufficient to overcome the presumption of
accident. The most that can be said is that they point as
strongly in one direction as the other; but this, as we have
seen, is not sufficient, for the reason that plaintiff's case is
aided by a presumption based upon the love of life found in
every individual, which is ordinarily sufficient to induce its
preservation.

-II. Plaintiff alleged in her petition that she made
proof of death, and served the same upon defendant, "a copy
of which proof is hereto attached, and made a part hereof,
marked 'Exhibit B.'" She also pleaded a waiver of proofs of
death, based upon certain correspondence, which will be here-
after referred to. Defendant admitted the receipt of Exhibit

B, but denied all other allegations relating to proofs of loss. As the question to be decided involves a consideration of all the correspondence between the parties, it is perhaps better to refer to the waiver pleaded by plaintiff. It is alleged in the petition that defendant refused, and still refuses, to pay the amount of the certificate, on the ground that the assured took his own life. In an amendment to the petition, plaintiff alleges that on October 8, 1896, she, through her attorney, notified the defendant, in writing, of the death of the assured, inquired of defendant whether it had received proofs of death, and, if not, whether it desired such proofs, and requested defendant to send blanks, that proofs might be made; that in reply thereto defendant informed plaintiff that it had written one E. G. Bowyer in regard to the death of the assured, and inclosed a copy of the letter written him, in which it denied all liability and refused to furnish blanks; that thereafter plaintiff, through her attorney, again wrote defendant, asking whether it refused to pay the certificate, which defendant never answered; that thereafter, and on October 26, 1896, plaintiff sent the proofs of loss referred to in her petition, and stated that, if further proofs were required, they would be furnished on application; that this letter was never answered; and that defendant received, and still retains, the proofs of death, and has never made any objection thereto, but refused, and has ever since refused, to pay the loss. It is true that this amendment does not state that these facts were pleaded to show a waiver or estoppel; but such is undoubtedly their legal effect, and plaintiff was not required to name her plea. If the facts stated amounted to a waiver, they are sufficient, although not christened. To sustain these allegations with reference to proofs of death, plaintiff introduced the following correspondence:

"Algona, Iowa, Sept. 22, 1896. Bankers' Life Association, Des Moines, Iowa: I am requested to inform you

of the death of Louis E. Stephenson by gunshot wound, which happened this a. m., as he holds policy No. 49,417 in your company.  Yours, truly, E. G. Bowyer."

"Algona, Iowa, Sept. 29, '97.  Bankers' Life:  I wrote you a few days ago of the death of L. E. Stephenson, policy No. 49,417, which, as yet, I have not heard from.  Will you please let me hear from you on receipt of this, and oblige? Yours, truly, E. G. Bowyer.

"P. S.  Please send blanks, etc."

Attached to the bottom of said exhibit is the following:

"Dear Sir:  In reply to your letter of the 29th ult. in regard to the death of Louis E. Stephenson, we have to say that we are informed that he took his own life.  If this is the fact, the association did not agree to pay anything to his beneficiary, and is not liable under the terms of the certificate.  We do not, therefore, send blanks for proof of his death, lest it might be held that by so doing we had admitted the validity of the claim.  If Mr. Stephenson is willing to surrender the certificate upon return to her of the notes given and of the money paid by Mrs. S., she may write us to that effect, and we presume that the board of directors would be willing to arrange the matter in that way."

"Algona, Iowa, Oct. 8, 1896.  Bankers' Life Association, Des Moines, Iowa—Gentlemen:  Are you aware that L. E. Stephenson, holding policy No. 49,417 in your association, is dead?  Have you received proofs of his death?  If you have not, and desire such proofs, will you kindly send me blanks, that the proofs may be made?  Awaiting an early answer, I am, yours, truly, E. V. Swetting, per M. J."

On the bottom of said exhibit is the following:

"Dear Sir:  In response to your inquiry of yesterday we have to say that we wrote Mr. E. G. Bowyer in regard to the death of Louis E. Stephenson under date of October 3d, and we inclose herewith copy of our letter to him."

"Des Moines, Iowa, Oct. 9th, 1896. E. V. Swetting, Algona, Iowa—Dear Sir: In response to your inquiry of yesterday, we have to say that we wrote Mr. E. G. Bowyer in regard to the death of Louis E. Stephenson under date of October 3d, and inclose herewith a copy of our letter to him. Yours, truly, The Bankers' Life Association, by Clark."

A copy of the first letter to Bowyer was inclosed, as stated.

"Algona, Ia., Oct. 12, 1896. Bankers' Life Association, Des Moines, Iowa—Gentlemen: I have yours of the 9th, inclosing copy of letter heretofore sent to E. G. Bowyer with reference to Louis E. Stephenson. I am not advised that the statement, or, more properly speaking, conclusion you draw, in the letter to Bowyer, is correct. Do I understand from the letter that your company refuses to pay the policy or certificate which Louis E. Stephenson held at the time of his death? An early reply will very much oblige. Yours, truly, E. V. Swetting."

"Algona, Iowa, Oct. 26, 1896. Bankers' Life Association, Des Moines, Iowa—Gentlemen: I inclose you herewith proof of death of L. E. Stephenson, of Algona, Iowa, who held certificate No. 49,417 in your association. If you desire further proofs as to his death, please advise me, and they will be furnished. Yours, very truly, E. V. Swetting."

"State of Iowa, Kossuth County—ss.: I, J. R. Laird, being first duly sworn, on oath say that I am a resident of Algona, Kossuth county, Iowa, and have been for the last ten years; that I am in the furniture and undertaking business; that I was the undertaker who acted at L. E. Stephenson's funeral; that I buried the said L. E. Stephenson in the cemetery at Algona, Kossuth county, Iowa, on the 24th day of September, A. D. 1896; that the said L. E. Stephenson died September 22, A. D. 1896, to my positive knowledge. J. R. Laird.

"Subscribed and sworn to before me by the said J. R. Laird this 26th day of October, A. D. 1896. Ernest V. Swetting, Notary Public."

"Mrs. Harriett Stephenson, Algona, Iowa: Your letter dated November 12th came this morning. We made an investigation as to the death of Louis E. Stephenson, and learned beyond any question that he took his own life. The contract provides that the certificate shall be null and void under such circumstances. We did not agree to pay anything if he took his own life, and, of course, cannot be expected to do so. We sent to the bank, to be delivered to you, the money he paid and the notes he gave. You can get it by going there for it. [Signed by defendant.]"

Some of these exhibits were objected to when offered, but the court reserved its ruling, and at no time indicated what his holding would be save as it may be gathered from his conclusion that proofs were either given or waived, for he refused to submit the question of the giving of proofs of death to the jury. As there were no rulings made on defendant's objections, there is nothing to consider, save the correctness of the ultimate conclusion arrived at.

Does this correspondence show that proofs of death were given as required by the statute then in force? Acts Eighteenth General Assembly, chapter 211, section 3. We are constrained to hold that it does not. The affidavit was not made by the beneficiary, nor does it show how the death of the assured occurred; and under our holding in *Brock v. Insurance Co.*, 96 Iowa, 39, and *Welsh v. Insurance Co.*, 71 Iowa, 338, it must be held insufficient.

The certificate of membership provides that the amount is to be paid upon presentation of the certificate, with satisfactory proof of claim, to be supplied by the beneficiary. If it be conceded that this is the only condition to be com-

plied with by the assured (a matter which we do not decide), yet the proofs do not meet this requirement.

Do the facts show a waiver of proofs of death? It is a principle of almost universal application that the law does not require the doing of vain things. Consequently it is held that a denial of liability on other grounds than failure to furnish proofs of loss is a waiver of the right to insist upon them. *Bloom v. Insurance Co.,* 94 Iowa, 363; *Parsons v. Grand Lodge,* 108 Iowa, 6. Now, the evidence shows beyond all question that defendant denied liability under the policy, and refused to furnish blanks upon which to make formal proofs of death. This was equivalent to saying that it would not receive proofs, even if made in proper form, for fear it might waive its defense. Defendant contends that it did not make an unqualified denial of liability in its first letter, and that plaintiff was in duty bound to comply with the law and the terms of the certificate, notwithstanding its intimation that it would not pay in a certain event. It further contends that the last letter was written more than sixty days after the death of the assured. This last contention is based upon a misapprehension of the facts. While the letter does not appear to be dated, it was certainly written before the fifteenth day of November, 1896. Plaintiff lived in Algona, and her letter to which the one now under consideration was an answer was written on November 12, 1896. It was answered on the day it was received, which, according to the usual course of events, would not be later than the 15th of that month. The assured died on the twenty-second day of September. This last letter is an absolute and unqualified refusal to pay, and constitutes a waiver of proofs. Again, defendant made no further response to the request to furnish blanks than what appears in the letters heretofore set out. It made no objection to the proofs as furnished, but, on the contrary, retained them in its possession until produced at the trial. These facts also show a waiver. *Grattan v. Insurance Co.,* 80 N.

Y. 281; *Dyer v. Insurance Co.,* 103 Iowa, 524; *Green v. Insurance Co.,* 84 Iowa, 135; *Young v. Insurance Co.,* 45 Iowa, 378. The trial court correctly held that there was a waiver of proofs of death.

Defendant further insists that, as plaintiff did not tender her certificate as provided by the terms of that instrument, she cannot maintain this action. We do not regard such tender a condition precedent to the right to bring suit. The certificate itself does not fix the time when it shall be surrendered, and, in the absence of some requirement that it shall be tendered before suit brought, it is sufficient to offer it at the trial. Certificates of deposit are almost always made payable upon presentation of the instrument, and yet it has never been held that presentment was a condition precedent to the right to maintain an action. Indeed, the rule is to the contrary. *Beardsley v. Webber,* 104 Mich. 88 (62 N. W. Rep. 173). The law does not require the surrender of a certificate of membership in a mutual benefit association before a right of action exists. The statute to which we have referred clearly negatives any such idea. *Vore v. Insurance Co.,* 76 Iowa, 548, relied upon by defendant, is not in conflict with anything that has been said in this opinion. It is entirely proper for plaintiff in an action of this kind, to plead the giving of proofs of death, and also a waiver thereof on the part of the defendant. *Warshawky v. Insurance Co.,* 98 Iowa, 221. Defendant's claim that no waiver is pleaded is fully answered by what we have already said. No prejudicial error appears, and the judgment is AFFIRMED.