JOHN T. CALVERT, Appellant, v. MASON CITY LOAN & INVESTMENT COMPANY et al., Appellees.

No. 42661.

MARCH 12, 1935.

REHEARING DENIED JUNE 21, 1935.

Ralph S. Stanbery and R. F. Clough, for appellant.

Senneff, Bliss & Senneff, for appellees.

Mitchell, J.—The appellant in his petition charged that the appellee Mason City Loan & Investment Company was a corporation and that W. L. Patton was its president, and that appellant had been solicited by the appellees between April 28, 1929, and August 5, 1929, to purchase certain securities and on or about the 5th day of August, 1929, W. L. Patton sold the appellant four bonds, of the par value of $500 each, being first mortgage gold bonds of the state of Missouri, Pierre Chouteau Apartments, for which Calvert, through his agent, paid the said W. L. Patton in cash $2,011.66, being the par value of the said bonds plus accrued interest. The petition further charges that the said W. L. Patton told appellant's agent that if she would purchase these bonds. at any time thereafter that she wanted her money, the money was right there for her and she could get her money at any time by bringing the bonds to his office, and the appellees would immediately pay her the cash for any or all of them, deducting only the accrued interest to such date. Petition further alleges that the appellant purchased said bonds and that thereafter, on or about the 27th of June, 1932, his agent went to W. L. Patton, at the office of the Mason City Loan & Investment Company, tendered said bonds, and asked for payment in accordance with said agreement, but the appellees failed and refused to pay said money or any part thereof. Appellant in his petition stated he "now tenders and offers to deliver to said defendants (appellees) the above described bonds, and for the purposes of making said tender good, now delivers the same to the Clerk of the District Court of Cerro Gordo County for delivery upon payment by the said defendants (appellees) in accordance with the said agreement"; and then prayed for judgment in the amount of $2,000, plus interest from January 1, 1932, and costs.

The Mason City Loan & Investment Company and W. L. Patton by way of answer admitted that Calvert purchased four bonds, but denied each and every other allegation of the petition and specifically denied that W. L. Patton told Calvert's agent that if she would purchase the bonds in question at any time thereafter,

the money would be ready for her and she could get it. The answer further alleged that at the time the bonds were purchased the Mason City Loan & Investment Company was engaged in the business of loaning money on mortgages and selling securities, and W. L. Patton was president of the company; that Calvert's agent was shown literature with reference to certain bonds, and the guaranties were made by two insurance companies with reference to said bonds, and they advised Calvert's agent that they could procure said bonds. The amendment to the answer alleged that the bonds were not owned by either the Mason City Loan & Investment Company or W. L. Patton, and that appellant's alleged agreement was within the statute of frauds. They also pleaded laches, and alleged that no claim had been made by Calvert with reference to any repurchase until approximately three years after the purchase and when the bonds were in default.

A jury was impaneled and the case proceeded to trial. Evidence was offered by the appellant, and, at the close of appellant's evidence, the appellees moved for a directed verdict, which motion was sustained. And from the order of the lower court, sustaining the motion to direct, Calvert has appealed to this court.

John T. Calvert is an elderly man, and was at the time of the trial of this case eighty-five years of age. He had appointed one Belle Carroll of Mason City, Iowa, orally and by written power of attorney, to transact his business for him.

It is the claim of the appellant that the appellee company, through its officers and agents, solicited his agent, Belle Carroll, to purchase bonds, and that at the time of the purchase of the bonds the appellees agreed to repurchase at any time that the appellant desired to sell the bonds.

The first ground of the motion to direct is that by the clear terms of our statute of frauds, being section 9933 of the Code, the appellant's cause comes within it. The statute of frauds had its origin in the ancient past. Its purpose was to prevent the lip service of a party from imposing on another a contract never intended. There is a distinction in the cases covering the question of whether repurchase agreements come within the statute of frauds. The general rule is that if the seller was selling his own property or his own stock, then the agreement does not come within the statute of frauds. Because the contract was one entire contract,—a part of which contract was the obligation of the seller, stated as a condi-

tion of said purchase and sale by the purchaser that at any time purchaser should return the bonds, the seller would pay the money received by him for them,—this obligation of the seller was a part of the original contract. The contract for the purchase and sale constitutes one contract, which was partly performed by purchaser paying the money for the bonds and the seller handing over the bonds.

In the case of Kladivo v. Melberg, 210 Iowa 306, 227 N. W. 833, this court said at page 314:

"If by the promise the promisor incurs an original or primary obligation of his own, one not merely collateral or superadded or secondary to that of another, it is not within the statute."

In that case the court said further:

"A contract of indemnity is original, not collateral."

And, in the appellees' brief and argument we find a citation from 27 Corpus Juris, at page 237, section 253, as follows:

"A contract by which one sells his own goods, payment and delivery being made, and agrees to repurchase them, upon the demand of the buyer, is an entire contract, and the promise to repurchase is taken out of the statute by such payment and delivery; but it is otherwise when an agreement for repurchase is made by a person other than the owner of the goods."

In other words, the statute of frauds does not apply when the seller sells his own property. In this case, if the bonds belonged to the Mason City Loan & Investment Company, then the statute would not apply, but if the bonds did not belong to the Mason City Loan & Investment Company and they simply acted as agents, according to the cases cited, the statute of frauds would apply.

Where the property is purchased from an agent, the contract of purchase is between the purchaser and the agent's principal, and the contract to repurchase is a contract between the purchaser and the agent, in which case you have two contracts, and the better weight of authority holds that the contract to repurchase comes within the statute of frauds. See Korrer v. Madden, 152 Wis. 646, 140 N. W. 325; Becker v. Kreul, 173 Wis. 273, 181 N. W. 211; Seaman v. Sweat, 22 Ga. App. 92, 95 S. E. 378; Morse v. Douglass, 112 App. Div. 798, 99 N. Y. S. 392.

Thus we must turn to the record in this case to ascertain whether or not the appellees were the owners of the bonds or simply acted as broker or agent.

The only evidence offered in this case was that of the appellant, a motion to direct a verdict having been sustained at the close of his testimony. He is, of course, entitled to the benefit of that interpretation of his evidence and of all inferences therefrom, if reasonable, most favorable to his case. And if reasonable minds may differ as to the conclusions to be drawn from the evidence, he is, if any of such conclusions would sustain right of recovery, entitled to have his case submitted to a jury. In his petition appellant alleged that appellees sold the bonds to him. The evidence shows that all transactions were carried on with the officers of the Mason City Loan & Investment Company at their offices in Mason City; that the appellees solicited appellant to purchase bonds; that no circulars or advertisements were shown to appellant; that the bonds were received from the appellees; and that the money was paid to them. There is no testimony that the bonds involved in this lawsuit were purchased from any one other than the appellees.

It seems to us, in view of what the evidence shows in this case, and there is no evidence to dispute it, the appellant has made out a prima facie case which would justify the jury in finding that the appellees owned the bonds which were sold. And thus, being the owners of the bonds, the agreement to repurchase would be a single contract and would not come within the statute of frauds. So that there can be no misunderstanding—we are not to be understood as expressing any opinion upon the evidence or the inferences that may be derived from it—we are simply holding that it is a question for the jury to decide upon the evidence submitted.

The appellees also contend that the time elapsing between the making of the contract of purchase by appellant through his agent, from appellees, and when the appellant asked the appellees to take up the bonds and pay the money, according to the agreement, was an unreasonable length of time, and that the appellant was guilty of laches, a period of two years and over nine months having elapsed.

The evidence shows that interest was paid on the bonds by the appellees to appellant every six months, up to and including January 1, 1932. It also discloses that at the request of the appellees an affidavit was signed, the exact nature of which does not appear,

but it does appear that the agent of appellant asked what it meant and the officer of the appellee company replied that he did not know exactly, but that appellee would protect the interest of the appellant.

In the case of Moench v. Hower, 137 Iowa 621, at page 624, 115 N. W. 229, this court said:

"The time within which plaintiff might elect to sell the stock to defendant was not fixed, but for the purpose of the case it may be conceded that he was required to elect within a reasonable time. * * * The terms of the contract prevented this being done within six months, and he was not bound to do so immediately thereafter. * * * What is a reasonable time must of necessity depend upon the circumstances of each case."

In the case at bar no time was fixed by the agreement to return the bonds and to demand the money. The course of dealing between the parties for a period of years constituted such circumstances that it was a question for the jury to say whether or not the delay was unreasonable and whether the appellant was guilty of laches.

Appellees also contend that no proper tender was made, it being incumbent upon the appellant as a condition precedent to the maintenance of the action to place the appellees in status quo. The evidence in this case shows that the bonds were tendered by an attorney who accompanied the agent of the appellant, and that the appellees refused to make payment at that time. There was also a tender made in the petition, and the bonds were delivered to the clerk of the district court. In view of such a showing, we do not believe the appellees can complain of the tender made.

Some other questions are raised, all of which have been given careful consideration. Upon the record as here disclosed, there being no evidence offered by the appellees, we believe a prima facie case was made for the jury, and that the motion to direct should have been overruled at that time.

It necessarily follows, therefore, that judgment and decree of the lower court must be, and it is hereby, reversed.

ANDERSON, C. J., and KINTZINGER, POWERS, and HAMILTON, JJ., concur.