## Anna Sczurek, Appellee, v. American National Insurance Company, Appellant.

Opinion filed March 1, 1941.

R. W. ROPIEQUET and PHILIP G. LISTEMAN, both of East St. Louis, for appellant; WHITNEL, BROWNING, LISTEMAN & WALKER, of East St. Louis, of counsel.

BEASLEY & ZULLEY, of East St. Louis, for appellee.

MR. JUSTICE CULBERTSON delivered the opinion of the court.

This is an appeal by the appellant, American National Insurance Company (hereinafter called defendant), from a judgment in favor of the appellee, Anna Sczurek (hereinafter called plaintiff), in the sum of $2,297.81, obtained by plaintiff in an action in the city court of East St. Louis upon two policies of life insurance upon the life of Mike Sczurek, plaintiff's husband. The case was tried by the court, without a jury.

The evidence discloses that the insured, Mike Sczurek (who was 33 years of age on January 25, 1933), after he returned home from his work, called at a grocery store which was operated by his brother and where his wife, the plaintiff, was working as cashier, and requested the keys to his Whippet automobile, which was parked near the store. The insured was then dressed in a dark-blue pencil-striped suit and was wearing a cap. He was pale in appearance, and witnesses testified that he looked, "disgusted, sick, and tired." On receipt of the keys to his automobile he told plaintiff that she would not see him any more. After the insured got into his automobile it was the last time that he was seen by the plaintiff, or other persons in the store.

A short time afterward the insured was seen by another witness, headed for the free bridge which spans the Mississippi river between the cities of East St. Louis, Illinois, and St. Louis, Missouri. Such witness, who was a bread salesman and who crossed the free bridge many times a day, had known insured since childhood. The insured and this witness waved at each other in passing. The same witness had occasion to cross the bridge about 20 to 25 minutes later, at about a quarter till five in the afternoon, and at that time he saw the Whippet car which the insured was driving,

parked on the approach of the free bridge near the east end of the superstructure. Such witness noticed the insured's car still parked there shortly afterward on his return trip.

At about 4:30 p.m. of the same afternoon, three farmers who were returning from St. Louis, Missouri, over the bridge, noticed a man wearing a dark suit and a cap walking very rapidly over the north sidewalk of the free bridge in the direction of St. Louis. They saw a Whippet automobile, facing west, parked near the east end of the superstructure of the bridge. As they observed the man who was walking from the direction of the automobile, toward them, he suddenly placed his hands upon the top railing, pulled his foot up over the center rail, and then pulled himself up and fell over into the river. The point at which the man jumped was about 20 feet to the west of the east shore of the Mississippi river. The three farmers stopped their truck and ran over to see if the body of the man who had jumped would come to the surface of the river. Although they remained watching the river for some 10 to 15 minutes, the body never came to the surface.

It was established that the insured, Mike Sczurek was unable to swim; and that he had a crippled leg and was ruptured.

After the plaintiff and her brother-in-law became alarmed over the insured's failure to return and had gone out to look for him, they finally found his automobile on the bridge at about 6:30 p.m. of the same day. The automobile was standing parked about 20 or 30 feet east of the steel superstructure and the keys were in the ignition.

On the following day, the St. Louis Post Dispatch, a daily newspaper, published an article regarding the insured and referred to the fact that he had jumped off the free bridge and lost his life. The article also referred to another man who had jumped about two o'clock, earlier in the afternoon, and whose body was

recovered. It was shown that the insured had jumped from a position on the east portion of the superstructure, while the other man who had jumped earlier in the afternoon, had jumped from the middle span of the bridge. The body of the insured was never recovered. There was some evidence that the plaintiff and the brother of the insured had made some efforts to find out if he was still alive, but aside from rumors of people who had claimed to have seen the insured, nothing further was heard of the insured after he had jumped from the bridge.

Notice of the death of insured was given to the defendant and request was made on defendant to furnish the plaintiff the customary blanks for making proof of death, on March 16, 1936. Plaintiff averred that she had no definite knowledge of the death until that date. The proofs of death were furnished to the defendant on blanks supplied by it, and in accordance with defendant's instructions, and included a newspaper clipping requested by defendant, which referred to the fact that the insured had died by jumping off the bridge and drowning, as hereinbefore stated. Such proof was furnished on March 28, 1936, and was afterward retained by the defendant, without objection, until the date of the trial when it was produced by defendant's attorneys at the trial, upon request of plaintiff's attorneys. No evidence was offered by the defendant.

The court entered judgment in favor of the plaintiff in the sum of $2,297.81, which included 5 per cent interest from the date of the delivery of proof of death to the defendant Company (after deducting the amount of policy loans and interest, as to which there is no dispute).

The defendant Company, as ground for reversal, contends that the evidence fails to show the death of the insured; that plaintiff failed to comply with conditions precedent entitling her to a recovery as against the defendant (the condition precedent being stated as

the failure to deliver the policies of insurance sued upon); and that the court erred in allowing plaintiff to recover interest from the time of the furnishing of proof of death on blanks supplied by the defendant.

Plaintiff established a prima facie right of recovery when she introduced the life insurance policies in evidence, together with the acknowledgment of the receipt of premiums, and the evidence referred to in the statement of facts herein as to the death of the insured by jumping into the Mississippi river and of the fact of notice of such death and proof of loss on blanks furnished by the defendant, in absence of the pleading of any affirmative defense, under the facts and circumstances in this case (*Benes v. Bankers Life Ins. Co.,* 282 Ill. 236; *Continental Life Ins. Co. v. Rogers,* 119 Ill. 474).

The additional fact that the notice and proof of loss which were submitted to defendant by plaintiff, were received and retained, without objection, constitutes a waiver of the insurer's right later to object thereto as not satisfying any requirements of the policies (*Continental Life Ins. Co. v. Rogers, supra*).

It has, likewise, been established that death (for the purpose of fixing liability on a life insurance contract), may be shown by circumstantial evidence alone and that the presumption of continuance of life prevails only until facts are shown which make the presumption of death most reasonable (*Veselsky v. Bankers Life Co.,* 248 Ill. App. 176).

In view of the facts as presented in the court below in the instant case, and of the principles hereinabove set forth, and in view of the well-established rule that in trials without a jury, the findings of the court are entitled to the same weight as a jury's verdict, and will not be set aside unless manifestly against the weight of the evidence (*Shapleigh Hardware Co. v. Enterprise Foundry Co.,* 305 Ill. App. 180; *Keefer Coal Co. v. United Elec. Coal Co.,* 291 Ill. App. 477), this court is

not. disposed to interfere with the conclusion of the court below.

Essentially,· the only other point which was raised by the defendant as a basis for reversal, is the contention that the policies of insurance were required to be delivered to the defendant prior to the institution of action upon the policies and that failure to deliver such policies is the failure to perform a condition precedent which prevents a recovery in this case. It is also contended that failure to deliver the policies prevents a recovery of interest as allowed in the court below as hereinbefore specified.

No affirmative defenses were pleaded below and, as pointed out heretofore, no objections were made to the notice of death and proof of loss furnished by plaintiff. The policies were actually introduced in evidence at the trial of the action, although an allegation of the complaint alleged that such policies were in the possession of the defendant. Defendant, however, is under misapprehension as to the effect of the failure to deliver the policies. Conditions precedent are such as are required to be performed before an insurance agreement becomes effective (*Crawford v. Abraham Lincoln Life Ins. Co.*, 278 Ill. App. 576). The failure to deliver the policies was clearly not of such character. The delivery of the policies. is likewise not a condition precedent to the institution of action on such policies even though the policies, as here, provide for actual delivery to an insurance company (*Stephenson v. Bankers' Life Ass'n,* 108 Iowa 637, 79 N. W. 459).

It is contended by the plaintiff that the abstract of defendant appellant was incomplete, scanty, and misleading, and that plaintiff appellee was thereby required to furnish a further and additional abstract and is entitled to recover costs therefor, pursuant to rule 34 of this court. Such additional abstract appears to have been necessary to a complete determination of the matter in this court and the clerk is, therefore, di-

rected to allow the costs thereof in accordance with rule 34 of this court.

Plaintiff appellee likewise contends that defendant's refusal to pay the amount of the loss is vexatious and without reasonable cause, and that the appeal is frivolous and is being prosecuted in furtherance of defendant's scheme of vexatious delay. Plaintiff, accordingly, requested the allowance of attorneys' fees to be taxed as costs, pursuant to section 767 of chapter 73 of Ill. Rev. Stat. [Jones Ill. Stats. Ann. 66.830]. Under the facts in the instant case we are not satisfied that the refusal of the defendant Company to pay was vexatious, or that the action of defendant Company in this case comes within the purview of the act referred to. We must, therefore, deny the request of plaintiff appellee for the recovery of attorneys' fees to be taxed as costs in the instant case.

There being no reversible error in the record, the judgment of the city court of the city of East St. Louis is, therefore, affirmed.

*Affirmed.*