DORIS M. COMFORT, Appellee, v. CONTINENTAL CASUALTY COMPANY, Appellant.

## No. 47320.

(Reported in 34 N. W. 2d 588)

NOVEMBER 16, 1948.

Bradshaw, Fowler, Proctor & Fairgrave, of Des Moines, for appellant.

Lehman, Hurlburt, Hossfeld, Blanchard & Cless, of Des Moines, for appellee.

HAYS, J.—Appellee, at the time in question, carried two insurance policies with appellant. One was known as a "medical reimbursement" policy; the other as a "loss of time" policy.

The medical-reimbursement policy provided:

" 'Injury' as used in this policy means bodily injury which is the sole cause of the loss and which is effected solely through accidental means while the policy is in force."

The loss-of-time policy provided:

" 'Injury' as used in this policy means bodily injury (suicide or self-destruction or any attempt thereat while either sane or insane not included) which is the sole cause of the loss and which is effected solely through accidental means while this policy is in force."

At the close of the testimony and after both parties rested, appellant moved for a directed verdict on the following ground:

"That the plaintiff has failed to produce any evidence to establish that there was an accident produced or caused within the meaning of the policies in this cause and in particular that the plaintiff has produced only evidence of facts which could not have happened as a matter of law and as a matter of natural law and common knowledge."

The motion was overruled. The court instructed the jury (instruction No. 4) as follows:

"You are instructed that an 'accident' is an event which, under the circumstances, is unusual and unexpected by a person to whom it happens: the happening of an event without the concurrence of the will of the person by whose agency

it is caused. By 'accidental means' is meant those means, the effect of which does not ordinarily follow and cannot be reasonably anticipated from the use of these means; an effect which the actor did not intend to produce and which he cannot be charged with the design of producing."

The jury returned a verdict for appellee and final judgment was entered. No exceptions were taken to above instruction and the definition of "accident" and "accidental means" is the law of this case.

The error assigned for a reversal is the overruling of the motion for a directed verdict. The question thus presented on this appeal is the single one of whether, under the definitions in instruction No. 4, there was sufficient evidence to submit the case to a jury. The established rule is that before a court is warranted in directing a verdict, every fact favorable to the party against whom the verdict is asked, and which the evidence tends to prove, must be conceded. Guest v. Burlington Opera-House Co., 74 Iowa 457, 38 N. W. 158; Calvert v. Mason City Loan & Investment Co., 219 Iowa 963, 259 N. W. 452; Tuthill v. Alden, 239 Iowa 181, 30 N. W. 2d 726.

There is no material dispute in the facts. Appellee, despondent over marital troubles, decided to commit suicide by asphyxiation. About five p. m. on the date in question she closed the windows and doors of her five-room bungalow and turned on all gas burners of her stove (four on top and the oven). After writing a suicide note she lay down and went to sleep, awakening about midnight. She then went to the kitchen and turned off the gas. She testified as follows:

"Q. Well, on finding yourself alive [upon awakening at midnight] what was your mental process as to whether you wanted to continue to live or not? A. Well, I never thought particularly about whether I wanted to live or not."

She further testified, regarding her actions just prior to the explosion:

"Q. Turned them all off? A. Yes, sir. Q. The oven as well as those at the top of the stove? A. Yes, sir.

"Q. Then what? A. And I lighted—I thought well, I had

better see if the pilot light would light, and if it would I would light it, and I went to the cupboard and got a match and lighted the pilot light, which lighted, and when I¹ held the match up to my mouth to blow it out * * * the gas apparently in the air ignited and burned my face and caught my hair."

She stated she lighted the pilot for the purpose of using the stove the next time she made coffee.

She further testified:

"Q. Mrs. Comfort, when you took a match and lit those burners did you intend to commit suicide? A. I did not. Q. Didn't you realize that by lighting the pilot there was apt to be a fire and explosion? A. No, I certainly did not or I wouldn't ever have done it. Q. When you were contemplating suicide did you at any time plan to commit suicide by fire or explosion? A. I did not."

On cross-examination, she stated:

"Q. Anyway, at the time you struck that match, if you did strike it, you knew that the house was full of gas, did you not? A. No, I didn't know that the house was full of gas. You could smell gas. I could smell it, as I stated previously. Q. Did you say you could or couldn't smell it? A. I said you could smell the gas. When I awakened I could smell the gas. I was very much surprised that I wakened because I thought that I would go to sleep and never waken. Q. Knowing then that the house was full of gas, you nevertheless lit the match; is that your story? A. I didn't know the house was full of gas. In fact, I don't think the house was. If it had been the whole house would have blown up, wouldn't it?"

The city firemen called to the scene stated that the smell of gas was noticeable and that the oven burner was turned on. The above constitutes the material part of the record. Is there sufficient evidence to submit to a jury the question of "an accident" and injury by "accidental means?"

The Iowa cases wherein this question has been discussed are numerous, and both parties cite and rely upon many of the same authorities. No purpose would be gained in a long analysis of these cases. See, however, Lickleider v. Iowa State

Traveling Men's Assn., 184 Iowa 423, 166 N. W. 363, 168 N. W. 884, 3 A. L. R. 1295, which is accepted by both parties as announcing the rule in Iowa. See also Rowe v. United Commercial Travelers Assn., 186 Iowa 454, 172 N. W. 454, 4 A. L. R. 1235; Dawson v. Bankers Life Co., 216 Iowa 586, 247 N. W. 279; Miser v. Iowa State Traveling Men's Assn., 223 Iowa 662, 671, 273 N. W. 155, 160. The rule adopted by the trial court as to when there is an "accident" and injury by "accidental means", as stated in instruction No. 4, above quoted, is in line with the Lickleider case, supra, and was evidently taken verbatim from the Miser case, supra. It is also said in' the Miser case, " * * * an *accidental result* and the *accidental means* by which it is caused are somewhat identical, and that proof of the former may be considered as proof of the latter."

While it is true that the gases in the house were there as the result of a contemplated suicide upon the part of the appellee, yet, if her testimony is to be believed, and this is for the jury to determine, the event happened without the concurrence of her will and was an effect which she did not intend to produce. As stated by Judge WEAVER in the Lickleider case, supra, at page 430 of 184 Iowa, page 366 of 166 N. W.:

"It makes no difference whether the injured man * * * voluntarily. sets in motion the first of a series of events which, in connected line of causation, results in his injury or death. If * * * the resulting injury and violence to him 'unexpectedly took place,' or was 'an unexpected result from a known cause,' or was produced 'without design or intention,' * * * it falls directly within the letter and spirit of the definition which has been placed upon the words by the most competent lexicographers, as well as by our most eminent jurists who have given attention thereto."

Clearly, under the record, there was a jury question presented. Finding no error, the judgment of the trial court is affirmed.—Affirmed.

All JUSTICES concur.