**CHEPKE, Appellant,**

v.

**LUTHERAN BROTHERHOOD, Appellee.**

[Cite as *Chepke v. Lutheran Brotherhood* (1995), 103 Ohio App.3d 508.]

Court of Appeals of Ohio,
Eleventh District, Trumbull County.

No. 94–T–5107.

Decided May 15, 1995.

*Richard D. Goldberg* and *William C.H. Ramage,* for appellant.

*C. Scott Lanz,* for appellee.

CHRISTLEY, Presiding Judge.

This is an appeal from a judgment filed by the Trumbull County Court of Common Pleas, wherein the court sustained the motion for summary judgment filed by appellee, Lutheran Brotherhood, on the complaint filed by appellant, Diane Chepke.

On September 29, 1993, appellant filed a complaint alleging that appellee owed her death benefits as a result of her husband's death. The benefits were denied under Section 2.8 of the life insurance contract, which limits death benefits to a refund of premiums paid in any case where the cause of death is a *result* of suicide. In the contract signed by decedent, Section 2.8 unambiguously states:

"*2.8 EXCLUSION: SUICIDE.* If the Insured dies by suicide, while sane or insane, within two years after the Date of Issue, the Death Proceeds of this contract are limited to the premiums paid less the sum of:

"1) Any Debt; and

"2) Any Partial Surrenders."

Pursuant to Section 2.8 of the contract, appellee tendered the sum of $1,726.61, representing a return of the premiums, to appellant on June 28, 1993.

At issue is whether decedent died as a *result* of committing suicide or as a result of an accident. It is undisputed that the physical cause of death was carbon monoxide inhalation. Further, it is also undisputed that the decedent was found in the garage with his truck engine running, that the garage door was closed, and that a hose was duct-taped from the muffler and placed inside the truck's cab. However, appellant also claimed to have found her husband's body on the garage floor near the rear wheel of the passenger side of the truck, thus raising the implication that he had left the truck and was trying to escape the garage.

The question appellant raises is the legal impact of the theory that the deceased changed his mind about committing suicide at the last minute, but died

before he could accomplish his change of heart. Appellee insurance company argues that even if those were the facts, the insured still died as a result of suicide and, thus, would be precluded from recovering the face amount of the policy.

Appellant's husband, Robert D. Chepke, entered into the life insurance policy with appellee on August 5, 1991. The policy had a face amount of $100,000, and appellant is the beneficiary of this policy. On December 27, 1992, while the policy was in "full force and effect," decedent was found dead as previously described.

After the complaint was filed, appellee filed a motion for summary judgment, arguing that the material facts were not in dispute and that reasonable minds could only conclude that the death was a suicide and, thus, within the exclusion. Appellee believed that it was entitled to judgment as a matter of law, pursuant to Civ.R. 56.

On June 6, 1994, appellant filed her brief in opposition to appellee's motion for summary judgment, believing that receipt of the benefits was not precluded because of her theory that her husband's death was accidental or unintentional. On June 15, 1994, appellee filed its reply to appellant's brief in opposition. On June 21, 1994, the court of common pleas sustained appellee's motion for summary judgment. This appeal timely followed.

Appellant has advanced the following assignment of error:

"The trial court committed error prejudicial to the appellant when it sustained a motion for summary judgment and entered judgment in favor of the appellee."

A trial court should grant a motion for summary judgment when it finds:

"(1) that there is no genuine issue as to any material fact; (2) that the moving party is entitled to judgment as a matter of law; and (3) that reasonable minds can come to but one conclusion, and that conclusion is adverse to the party against whom the motion for summary judgment is made, who is entitled to have the evidence construed most strongly in his favor." *Harless v. Willis Day Warehousing Co.* (1978), 54 Ohio St.2d 64, 66, 8 O.O.3d 73, 74, 375 N.E.2d 46, 47.

■ We believe this to be a case of first impression in Ohio, to wit, the classification of the cause of death as either suicide or an accident for insurance purposes in a scenario where the deceased allegedly changed his mind after instigating a suicide attempt.

*Bergquist v. Med. College of Ohio* (June 10, 1988), Lucas App. No. L–87–327, unreported, 1988 WL 60970, contained the closest fact scenario. In *Bergquist,* an anesthesiologist, who had a history of chemical dependency, injected himself with Meperidine, a controlled substance, during an operation and died. His wife filed for workers' compensation benefits since his death arose out of his employment.

The Industrial Commission ruled that the claim should be denied since the overdose was voluntarily injected, and the Toledo Regional Board of Review affirmed this decision. Decedent's wife appealed to the Lucas County Court of Common Pleas.

Appellees were granted summary judgment based on the fact that payment of benefits is precluded for self-inflicted injuries. Appellant argued that whether the act was voluntary was a question of fact, but the court held, "Dr. Bergquist had unquestionably acted purposely in injecting himself with the overdose of the drug because he was aware of the health risks of chemical abuse and the evidence reveals that Dr. Bergquist was of sound mind on the date of his death." *Id.* at 3.

Because appellant in *Bergquist* failed to set forth any evidence which would refute a finding that decedent was of sound mind on the day of his death, even when looking at the evidence in appellant's favor, there was no genuine issue as to whether decedent voluntarily injected himself. The judgment of the court of common pleas was affirmed.

In the case at bar, it is clear that decedent did try to commit suicide on the day in question. The fact that he pulled his truck into his wife's space, closed the door, turned on the motor, and taped and attached a hose from the exhaust into the cab of his truck make this fact indisputable. The only fact which remotely raises the question of intent is that apparently his body was found outside the truck cab.

■ "Suicide" is "used with reference to the act of self-destruction, and as synonymous with 'self-murder'." 28 Ohio Jurisprudence 3d 291 (1981), Criminal Law, Section 1775. "Accident" is defined as "an event which under the circumstances is unusual and unexpected by the person to whom it happens; an unusual, fortuitous, unexpected, unforeseen or unlooked for event, happening or occurrence * * *." Black's Law Dictionary (5 Ed.Rev.1979) 14. It is clear from this definition that decedent's death was not an "accident" because it would be usual, expected, and foreseeable that one would die from inhaling carbon monoxide fumes in a closed garage, especially with a hose directing the fumes inside a vehicle.

Appellee argues that the only conclusion reasonable minds could come to is that decedent attempted suicide and died as a result; further, appellant did not submit any evidence which would raise a genuine issue as to his cause of death. All evidence was, in fact, consistent with a suicide attempt: a hose was deliberately jury-rigged from the exhaust, his car had been moved into his wife's garage space, the engine had been turned on, and the garage door was closed.

Appellee admits that summary judgment should not have been granted if there was any evidence at all that the death could have been a result of either suicide

*or* an accident, for example, if the same situation occurred but no hose was involved. Appellee's point is that if the circumstances surrounding the death indicated that such circumstances had not been brought about by the deliberate actions of the decedent, *i.e.*, they were accidental, then summary judgment would not have been appropriate.

To the contrary, appellee argues that the circumstances of the decedent's death could only be viewed as a deliberate attempt at suicide, and any last minute recantation would not change the fact that the decedent died as a result of his own deliberate actions.

On the other hand, appellant argues that *intent* is a crucial element to prove in a case dealing with avoidance of insurance due to an alleged suicide. 43 American Jurisprudence 2d (1982) 607, Insurance, Section 537. Appellant argues that in order for the court to know if the decedent intended suicide, it must be apprised of the background of his life. She asserts that reasonable minds could argue that decedent did not intend to commit suicide and was trying to escape from the garage, based on where his body was found and, thus, his death was accidental.

Appellant advances several different theories which could have explained the position of the body outside the truck cab. However, these theories are not supported by *anything* but speculation. And, as previously pointed out, even if there were facts which unequivocally indicated a last minute change of heart, those facts would actually be irrelevant to the issue of whether the decedent was responsible for deliberately creating the circumstances which ultimately brought about his death.

Thus, a reasonable jury could only conclude that decedent died as a *result* of his own actions in trying to commit suicide. There was no evidence that would raise a genuine issue of material fact over whether the deceased had attempted to commit suicide and subsequently died as a direct and proximate result, regardless of any final-hour repudiation. *Farmers Ins. of Columbus, Inc. v. Stuck* (Mar. 19, 1993), Lucas App. No. L–92–167, unreported, at 11, 1993 WL 77089.

The relevant issue is that his death *resulted* from his original intention to kill himself. Any intervening revocation of that intent is irrelevant and immaterial.

There are many other instances in which a court would hold along the same lines. For example, in the case of arson, if a person intends to burn down his home to collect the insurance proceeds and actually lights a match to the gasoline poured along the perimeter, at that moment in time, he has committed or attempted to commit arson. It makes no difference if he subsequently changes his mind and runs next door to call the fire department or even throws water on the fire; he has still committed arson or at least attempted to commit arson.

Similarly, if someone deliberately cuts his own wrists, then decides that he no longer wishes to die, drives himself to the hospital, but bleeds to death on the way, the cause of death is not an accident but suicide. It is irrelevant that the decedent had changed his mind and was on his way to the hospital at the time he died. He still died as a result of attempting suicide. Such a change in intent might make a difference to the decedent's immortal soul, but not to his insurance beneficiary.

Were we to hold otherwise, a question of fact would arise for most instances of suicide. What was the state of mind of the deceased in the moments before his death? Was the phone off the hook because decedent was trying to call 9–1–1 or because he did not want to be interrupted? Did decedent die as a result of a struggle to try to escape the noose around his neck?

This court believes that under the facts set forth in the materials accompanying the motion for summary judgment in the instant case, not only is it pure speculation to infer the decedent's state of mind at the time of his death based solely on the alleged location of his body outside his truck, but it is unnecessary. A person "is presumed to intend the natural and probable causes of his intentional act." *Nationwide Mut. Fire Ins. Co. v. Turner* (1986), 29 Ohio App.3d 73, 76, 29 OBR 83, 86, 503 N.E.2d 212, 216.

Decedent intentionally ran carbon monoxide into his truck in a closed garage. The natural and probable consequence of his deliberate acts was his own death.

Where an insurance contract is clear and unambiguous and is dispositive of the issue before the court, the court is constrained to enter summary judgment for the insurance company.

"If the language and terms of a contract are unambiguous, then its interpretation is a matter of law presenting no issues of fact for the jury's determination." *Waterfield Mtge. v. Buckeye State Mut. Ins. Co.* (Sept. 30, 1994), Miami App. No. 93–CA–53, unreported, at 12, 1994 WL 527594.

Here, when the clause is unambiguous in meaning, its interpretation can be dealt with as a matter of law by the trial court.

■ Although not really at issue in this case, appellant does mention the presumption against suicide. However, it is well established in *Evans v. Natl. Life Acc. Ins. Co.* (1986), 22 Ohio St.3d 87, 22 OBR 123, 488 N.E.2d 1247, paragraph one of the syllabus, that this presumption is rebuttable.

"In the instance of a claim upon the life insurance policy where the cause of death is by some unknown external and violent means, there is a presumption against suicide. (*Shepherd v. Midland Mut. Life Ins. Co.* [1949], 152 Ohio St. 6

[39 O.O. 352, 87 N.E.2d 156].) The presumption being no more than *prima facie* is rebuttable and disappears upon the production of substantial evidence to the contrary sufficient to counterbalance it. (*Carson v. Metro. Life Ins. Co.* [1956], 165 Ohio St. 238 [59 O.O. 310, 135 N.E.2d 259].)"

In this case, there is substantial evidence to combat the presumption.

While the court is sympathetic to the plight of the widowed appellant and her children, the fact remains that the contract clause regarding suicide was unambiguous, and that the facts regarding the decedent's death indicated that he died as a direct result of having tried to kill himself.

In sum, speculation as to why decedent died outside of his truck does not overcome the undisputed facts which indicate that the death was brought about as a *result* of decedent's trying to kill himself by breathing carbon monoxide fumes, regardless of any change of heart. Thus, his death falls within the suicide exclusion of the policy, and appellant was only entitled to a refund of the premiums which were paid.

Accordingly, appellee was entitled to judgment as a matter of law and the trial court did not err in granting summary judgment to appellee.

This court finds appellant's assignment of error to be without merit.

The judgment of the trial court is affirmed.

*Judgment affirmed.*

JOSEPH E. MAHONEY and EDWARD J. MAHONEY, JJ., concur.

EDWARD J. MAHONEY, J., retired, of the Ninth Appellate District, sitting by assignment.