**ESTATE OF Michael G. TEDROW, Roxene Louise Tedrow, Administrator, and Roxene Louise Tedrow, Individually, Appellant,**

v.

**STANDARD LIFE INSURANCE COMPANY OF INDIANA, Appellee.**

No. 95–2051.

Supreme Court of Iowa.

Jan. 22, 1997.

Lee M. Walker and John E. Billingsley of Walker, Knopf & Billingsley, Newton, for appellant.

William F. Fanter and Elizabeth A. Nigut of Bradshaw, Fowler, Proctor & Fairgrave, P.C., Des Moines, for appellee.

Considered by McGIVERIN, C.J., and LARSON, LAVORATO, NEUMAN, and ANDREASEN, JJ.

NEUMAN, Justice.

Plaintiff Roxene Tedrow appeals the summary denial of her claim for life insurance proceeds upon the death of her husband, Michael Tedrow. The question is whether the suicide exclusion clause under Michael's life insurance policy prevents Roxene from recovering full death benefits as a matter of law. The district court drew such a conclusion, and we affirm.

The case reaches us on appeal from summary judgment for the defendant, Standard Life Insurance Company of Indiana. Under well-settled rules, that means the plaintiff—who opposed the insurer's motion for summary judgment—is entitled to every inference the factual record will bear. *Red Giant Oil Co. v. Lawlor*, 528 N.W.2d 524, 528 (Iowa 1995). Summary judgment is appropriate only where no material facts are in dispute and the movant is entitled to judgment as a matter of law. Iowa R. Civ. P. 237(c).

The material facts are these: Michael Tedrow was despondent over the breakup of his marriage. He left a suicide note that disposed of his worldly possessions, expressed regret to his young son, and included a child support payment. He then started the engine of his pickup truck in the enclosed garage of his home. What brings the case to our attention is the fact that he evidently experienced a change of heart during the course of the suicide. He was found overcome by carbon monoxide fumes, not in the garage, but in the house near the front door.

The medical examiner ruled the death a suicide, reasoning "[a]lthough Mr. Tedrow was found in the house and not in the garage, he initiated the chain of events which caused his death." The defendant insurer denied Roxene's claim for death benefits citing the policy's suicide exclusion clause. The clause reads in pertinent part:

> We will limit the proceeds we pay under this policy if the insured dies by suicide, sane or insane, within 2 years ... from the Date of Issue.

Roxene brought suit to establish her right to recover under the policy. Her petition, which conceded that Michael exposed himself to exhaust fumes, nevertheless urged that his death "occurred without the concurrence of his will and was an effect which he did not intend to produce." In resistance to the insurer's motion for summary judgment, Roxene claimed the existence of material facts disputing Michael's intent to take his own life. The district court ruled that Michael's changed intent was immaterial; Michael put in motion the events leading to his death, thereby preventing recovery under the policy. This appeal by Roxene followed.

Because policy exclusions are strictly construed against the insurer, they must be clearly defined. *Farm & City Ins. Co. v. Gilmore*, 539 N.W.2d 154, 157 (Iowa 1995). The burden of proving the applicability of an exclusion rests squarely with the insurer. *Id.* Here there is no dispute over the plain and unambiguous import of the policy's suicide exclusion. The only fact material to the controversy is whether Michael died by suicide.

■ Michael's certificate of death reported "Suicide by Carbon Monoxide Poisoning" as the immediate cause of his death, and "Operated car in closed garage" as how the injury occurred. Faced with this compelling proof, Roxene raised the presumption *against* suicide, a principle firmly rooted in our jurisprudence. *See Gavin v. Des Moines Life Ins. Co.*, 149 Iowa 152, 156, 126 N.W. 906, 907 (1910). As we explained over fifty years ago,

> [t]he presumption against suicide is a strong one. It has been said to have its basis in the love of life and the instinct of self-preservation, the fact that self-destruction is contrary to the general conduct of mankind and that suicide by a rational man is an act of moral turpitude.

*Brown v. Metropolitan Life Ins. Co.*, 233 Iowa 5, 10, 7 N.W.2d 21, 24 (1942).

■ Roxene's reliance on the presumption, however, overlooks a factor crucial to its application: the presumption operates as "a presumption in favor of the theory of *accident*." *Id.* (quoting *Stephenson v. Bankers' Life Ass'n*, 108 Iowa 637, 641, 79 N.W. 459, 460 (1899)) (emphasis added); *accord Reddick v. Grand Union Tea Co.*, 230 Iowa 108, 118, 296 N.W. 800, 804 (1941) ("If the facts surrounding death can be reconciled with any reasonable theory of innocence or accidental cause, that explanation will be adopted."). In a recent case, for example, our court of appeals gave great weight to the presumption where the parties disputed whether a fatal gunshot wound was accidental or self-inflicted. *Schmal v. Minnesota Mut. Life Ins. Co.*, 432 N.W.2d 695, 697 (Iowa App.1988). In *Schmal*, as here, the medical examiner had ruled the decedent's death a suicide. *Id.* at 696. But given the uncertainty surrounding not only the decedent's state of mind but the manner of death itself, the insurer could not overcome the burden created by the presumption against suicide as a matter of law. *Id.* at 697.

■ The factual uncertainty present in *Schmal* readily distinguishes it from the case before us. There appears no serious dispute over the self-destructive nature and intent of Michael's initial act of enclosing himself in the garage with his truck engine running. *See Lukecart v. Swift & Co.*, 256 Iowa 1268, 1283, 130 N.W.2d 716, 724 (1964) ("a person is presumed to intend the natural consequences of an act intentionally done"); *cf. Allied Mut. Ins. Co. v. Costello*, 557 N.W.2d 284, 288 (Iowa 1996) (act of committing assault "could scarcely be considered rational, but it does not follow [the assault] was unintentional"). The question is whether Michael's subsequent move to escape the fumes renders his ultimate death accidental. We think not.

Prior cases illustrate the distinction between death by accidental means and death by intentional act. In *Comfort v. Continental Casualty Co.*, the plaintiff fully intended to commit suicide by filling her apartment with gas fumes from the unlit burners on her stove. *Comfort v. Continental Cas. Co.*, 239 Iowa 1206, 1208, 34 N.W.2d 588, 589 (1948). Hours later she awakened to find that her conduct had not produced the intended result. She then turned off the gas. But when she attempted to relight the stove's pilot light, she suffered burns from the explosion that followed. The question was whether she could recover medical expenses where the insurer claimed the injuries were self-inflicted, not accidental, as a matter of law. *Id.* at 1208, 34 N.W.2d at 589. We quoted with approval the following jury instruction:

> By "accidental means" is meant those means, the effect of which does not ordinarily follow and cannot be reasonably anticipated from the use of these means; an effect which the actor did not intend to produce and which he cannot be charged with the design of producing.

*Id.* The evidence plainly revealed the plaintiff did not intend to commit suicide by fire or explosion. *Id.* We affirmed the district

court's ruling that a reasonable person could find the injuries unintended and, thus, accidental. *Id.* at 1210, 34 N.W.2d at 590.

A contrasting fact pattern was presented in *Sigler v. Mutual Benefit Life Insurance Co.*, 506 F.Supp. 542 (S.D.Iowa), *aff'd*, 663 F.2d 49 (8th Cir.1981). There the decedent died by hanging, an unintended result of autoerotic asphyxiation. *Id.* at 543. His evident motivation was sexual, not suicidal. But the court held that the voluntary and deliberate nature of the act of hanging oneself—coupled with its apparent risk of death—prevented recovery of insurance benefits based on accidental injury. *Id.* at 544.

Roxene argues strenuously that Michael's change of heart creates a factual issue over whether the fatal event was intentional or accidental. The same argument was recently rejected in an Ohio case with similar facts. In *Chepke v. Lutheran Brotherhood*, 103 Ohio App.3d 508, 660 N.E.2d 477, 478 (1995), the insured parked in a garage and rigged a hose from the exhaust pipe to the cab of his pickup truck. He died of carbon monoxide inhalation but, as here, his body was found outside the truck. This evidence of an intent to escape the fumes prompted the decedent's widow to argue his death was accidental. *Id.* at 479. The Ohio court ruled that speculation over why the decedent died outside his truck could not overcome undisputed proof of death by self-inflicted carbon monoxide poisoning. *Id.* at 480–81. To rule otherwise, the court observed, would be problematic in nearly all suicide cases. It captured the problem this way:

> [I]f someone deliberately cuts his own wrists, then decides that he no longer wishes to die, drives himself to the hospital, but bleeds to death on the way, the cause of death is not an accident but suicide. It is irrelevant that the decedent had changed his mind and was on his way to the hospital at the time he died. He still died as a result of attempting suicide. Such a change in intent might make a difference to the decedent's immortal soul, but not to his insurance beneficiary.

*Chepke*, 660 N.E.2d at 480.

We concur in the Ohio court's blunt but persuasive reasoning, and choose to apply it

here. Roxene may well believe that Michael was merely trying to scare her and had no intent of following through on a suicide. But such speculation cannot, as a matter of law, negate the effect of his voluntary acts which set in motion a circumstance likely to result in death. *See Sigler*, 506 F.Supp. at 544 (finding death nonaccidental where decedent did not intend to cause own death but, under the circumstances, should reasonably have expected action could be fatal). No reasonable person could find under this record that Michael's death was accidental. Accordingly, we affirm the district court's summary judgment for the insurer.

**AFFIRMED.**