OPINION *Page 2 
{¶ 1} Appellant appeals the jury verdict entered in the Ashland County Court of Common Pleas finding in favor of Appellants against Appellee Matthew Gentry in the amount of $100,000.00, and finding for Appellees Kevin and Teana Gentry on Appellants' negligence claims against them.
 {¶ 2} Appellants also appeal the trial court's granting of Intervenor Appellee Grange Mutual Casualty's Motion for Summary Judgment and the denial of their Motion for a New Trial.
 STATEMENT OF THE CASE {¶ 3} In March, 2003, Appellee Matthew Gentry, then fourteen years old, modified five shotgun shells by removing the pellets and replacing them with fertilizer. Matthew's mother, Appellee Teana Gentry, heard on a radio program about how shotgun shells could be modified by replacing the pellets with fertilizer, which would make a loud bang and could be used to scare animals away. This modification appealed to Teana Gentry because she had witnessed her dogs being attacked by the neighbors' dogs, and had been told at least twice by other people about her dogs being attacked.
 {¶ 4} Matthew Gentry modified five (5) shotgun shells in the kitchen of the Gentry home while his mother was present in the kitchen with him.
 {¶ 5} After completing the modification, Teana Gentry looked at the fertilizer shells to make sure that she could distinguish the modified shells from the regular shells. Matthew marked the modified shotgun shells as Fertilizer shells and placed them on top of the family piano where they remained unused for approximately four months. *Page 3 
The modified shells were not kept in the Gentry's gun cabinet in order to keep them separate from the regular live ammunition.
 {¶ 6} The Gentrys owned a .22 caliber rifle, a 12-gauge shotgun, and a pellet gun. The rifle and shotgun were always kept in a locked gun cabinet in the basement. The gun cabinet had two locks on it, and the keys to the locks were kept by Kevin and Teana Gentry in different locations.
 {¶ 7} On May 23, 2003, Teana Gentry left her home around 2:45 p.m. to take her younger son David to his baseball game. Kevin Gentry was at work and did not return home until 6:00 p.m. Matthew Gentry remained at home with his grandfather, Gerald Billups, age eighty (80), who lived with the Gentry family.
 {¶ 8} Later in the afternoon of May 23, 2003, Matthew was inside his home and heard a banging noise outside. Matthew went to the kitchen and obtained the key to the gun cabinet from the kitchen drawer where his mother, Teana Gentry, had put it. Matthew went downstairs and unlocked the gun cabinet. He then brought the shotgun upstairs, and loaded one of the "fertilizer shells" into the shotgun. He then went outside, yelled "get off my property" twice, and then proceeded to shoot in the direction of the noise. One of the shotgun shells, which apparently contained pellets, struck Plaintiff-Appellant Emmanuel Torres, who was then ten years old, in the head. He had been riding his bicycle in the lane between the Gentry's property and their neighbors' property.
 {¶ 9} On May 24, 2004, Plaintiffs-Appellants Emmanuel Torres (a minor) and his father, Salvatore Torres (collectively "Plaintiffs"), filed a complaint against Kevin and *Page 4 
Teana Gentry, and their son Matthew. The Plaintiffs' claims arise out of a shooting incident that occurred on May 23, 2003.
 {¶ 10} This original Complaint contained a First Cause of Action against Matthew Gentry for willful and malicious behavior, a Second Cause of action against Matthew Gentry for negligence and a Third Cause of action against Teana and Kevin Gentry for negligence.
 {¶ 11} Appellee Grange Mutual Insurance Company (Grange"), the Gentrys' homeowner's insurance company, immediately intervened in the lawsuit seeking a declaration that it owed no duty to defend or indemnify the Gentrys.
 {¶ 12} On July 26, 2005, Grange filed for summary judgment. In its motion, Grange argued that it owed no duty to defend or indemnify the Gentrys because 1) Matthew's conduct did not constitute an "occurrence"; and 2) Matthew's conduct constituted an "intentional act" that excluded coverage for all persons insured under the policy.
 {¶ 13} On January 19, 2006, the trial court granted Grange's motion in its entirety declaring that Grange has no contractual obligation to defend or indemnify the Gentry's for the claims asserted in Plaintiffs' complaint.
 {¶ 14} Plaintiffs-Appellants filed an Amended Complaint which still contained separate claims against Teana and Kevin, but dropped the claim for willful and malicious conduct against Matthew.
 {¶ 15} The case was set for trial on August 29, 2006.
 {¶ 16} In their opening statement, defendants admitted Matthew's negligence, but disputed the claim that Mr. and Mrs. Gentry were negligent. (T. at 8-29, 25). *Page 5 
 {¶ 17} The remaining issues at trial were: 1) proximate cause and amount of damages, if any, caused by Matthew's negligence; and 2) whether or not Teana and Kevin Gentry were negligent as a result of Matthew Gentry's conduct.
 {¶ 18} After a five day trial, the jury returned two verdicts: 1) a verdict in favor of Plaintiffs against Matthew Gentry in an amount of $100,000.00; and 2) a verdict for Defendants Kevin and Teana Gentry on Plaintiffs' claims.
 {¶ 19} Appellants now appeal, assigning the following errors for review:
 ASSIGNMENTS OF ERROR {¶ 20} "I. THE TRIAL COURT COMMITTED REVERSIBLE ERROR IN GRANTING INTERVENOR-APPELLEE'S GRANGE MUTUAL CASUALTY'S MOTION FOR SUMMARY JUDGMENT.
 {¶ 21} "II. THE TRIAL COURT COMMITTED REVERSIBLE ERROR IN INSTRUCTING THE JURY THAT DEFENDANTS TEANA AND KEVIN GENTRY'S NEGLIGENCE COULD ONLY BE DERIVATIVE OF MATTHEW GENTRY'S NEGLIGENCE, AND SOUND IN NEGLIGENT ENTRUSTMENT, NEGLIGENT SUPERVISION OR PARENTAL KNOWLEDGE AND CONSENT TO WRONGDOING, AND IN FAILING TO GIVE THE LIABILITY INSTRUCTIONS REQUESTED BY PLAINTIFFS.
 {¶ 22} "III. THE TRIAL COURT COMMITTED REVERSIBLE ERROR IN OVERRULING PLAINTIFFS' MOTION TO SHOW CAUSE WHY GERALD BILLUPS SHOULD NOT BE HELD IN CONTEMPT/ MOTION TO USE VIDEOTAPE OF GERALD BILLUPS AS EVIDENCE, AND PLAINTIFFS' MOTION FOR NEW TRIAL SHOULD HAVE BEEN GRANTED. *Page 6 
 {¶ 23} "IV. THE TRIAL COURT COMMITTED REVERSIBLE ERROR IN NOT GIVING A JURY INSTRUCTION ON THE DOCTRINE OF RES IPSA LOQUITUR."
 I. {¶ 24} In their first assignment of error, Appellants argues the trial court erred in granting Appellee Grange Mutual Insurance Company's Motion for Summary Judgment holding that it had no duty to defend the Gentry defendants. We disagree.
 "Summary Judgment Standard" {¶ 25} Summary judgment proceedings present the appellate court with the unique opportunity of reviewing the evidence in the same manner as the trial court. Smiddy v. The Wedding Party, Inc. (1987),30 Ohio St.3d 35, 36. Civ.R. 56(C) provides, in pertinent part:
 {¶ 26} "Summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence in the pending case, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. * * * A summary judgment shall not be rendered unless it appears from such evidence or stipulation and only therefrom, that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, such party being entitled to have the evidence or stipulation construed most strongly in his favor."
 {¶ 27} Pursuant to the above rule, a trial court may not enter summary judgment if it appears a material fact is genuinely disputed. The party moving for summary judgment bears the initial burden of informing the trial court of the basis for its motion *Page 7 
and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact. The moving party may not make a conclusory assertion that the non-moving party has no evidence to prove its case. The moving party must specifically point to some evidence which demonstrates the non-moving party cannot support its claim. If the moving party satisfies this requirement, the burden shifts to the non-moving party to set forth specific facts demonstrating there is a genuine issue of material fact for trial. Vahila v. Hall,77 Ohio St.3d 421, 429, 1997-Ohio-259, citing Dresher v. Burt,75 Ohio St.3d 280, 1996-Ohio-107.
 {¶ 28} It is based upon this standard that we review appellant's assignments of error.
 {¶ 29} The homeowner's policy in the case sub judice contained the following language:
 {¶ 30} "We will pay all sums, up to our limits of liability, arising out of any one loss for which an insured person becomes legally obligated to pay as damages because of bodily injury or property damage, caused by an occurrence covered by this policy."
 {¶ 31} "Occurrence" is defined in the policy as:
 {¶ 32} "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions, which result in bodily injury or property damage during the policy period.
 {¶ 33} The Grange policy also contains the following exclusions from coverage:
 {¶ 34} "Under Personal Liability Coverage and Medical Payments to Others Coverage, we do not cover:
 {¶ 35} "* * * *Page 8 
 {¶ 36} "4. Bodily Injury or Property Damage caused by the willful, malicious, or intentional act of a minor for which an insured person is statutorily liable.
 {¶ 37} "* * *
 {¶ 38} "6. Bodily Injury or Property Damage expected or intended by any insured person.
 {¶ 39} "* * *
 {¶ 40} "10. Bodily Injury or Property Damage arising out of sexual molestation or any sexual activity, corporal punishment or physical or mental abuse.
 {¶ 41} "* * *
 {¶ 42} "9. Personal Injury Coverage — Section 2
 {¶ 43} "Exclusions
 {¶ 44} "Insurance provided under this endorsement does not apply to:
 {¶ 45} "* * *
 {¶ 46} "(b) Personal Injury arising out of a willful violation of a penal statute or ordinance committed by or with the knowledge or consent of an insured person."
 {¶ 47} Felonious assault, as codified in R.C. § 2903.11, provides:
 {¶ 48} "(A) No person shall knowingly do any of the following:
 {¶ 49} "(1) cause serious physical harm to another or to another's unborn;
 {¶ 50} "(2) cause or attempt to cause physical harm to another or to another's unborn by means of a deadly weapon or dangerous ordinance.
 {¶ 51} "* * *
 {¶ 52} "(D) Whoever violates this section is guilty of felonious assault, a felony of the second degree. If the victim of the violation of division (A) of this section is a peace *Page 9 
officer, felonious assault is a felony of the first degree. If the victim of the offence is a peace officer, as defined in Section 2935.01
of the Revised Code, and if the victim suffered serious physical harm as a result of the commission of the offense, felonious assault is a felony of the first degree, and the court, pursuant to division (F) of Section2929.13 of the Revised Code, shall impose as a mandatory prison term one of the prison terms prescribed for a felony of the first degree."
 {¶ 53} Based on Appellee Matthew Gentry's adjudication and the policy language as contained in the Grange Mutual policy, the trial court found:
 {¶ 54} "1. Matthew Gentry's adjudication of delinquency precludes a conclusion by this Court that his conduct was "accidental" and therefore it cannot constitute an "occurrence" for which coverage exists under because "occurrences" are defined as accidents.
 {¶ 55} "2. Matthew Gentry's adjudication of delinquency establishes the exclusions for "bodily injury or property damage expected or intended by any insured person" and "personal injury arising out of a willful violation of a penal statute or ordinance committed by or with the knowledge or consent of an insured person."
 {¶ 56} The trial court went on to find that the policy excluded coverage for "all insureds, if any insured commits an intentional act." The trial court found that Matthew Gentry's act of shooting Emmanuel Torres was an "intentional act" under the policy and that Matthew Gentry was an "insured" under said policy. The trial court therefore found that such provision excluded coverage for Teana and Kevin Gentry.
 {¶ 57} In this case, it is undisputed that Appellee Matthew Gentry was adjudicated delinquent by the Ashland County Juvenile Court by reason of committing a criminal act *Page 10 
which, if committed by an adult, would be punishable as felonious assault under R.C. § 2903.11.
 {¶ 58} The Grange policy designates Kevin and Teana Gentry as the named insureds. It states that "you" and "your" refer to the named insured shown in the declarations, and states further that "insured" means you (the named insured) and, if you are an individual, your relatives who are members of your household. Most importantly, the intentional act exclusion states that Grange will not pay for loss arising out ofany act committed by or at the direction of any insured.
 {¶ 59} "[A] criminal conviction, in and of itself, may conclusively establish intent for purposes of applying an intentional-acts exclusion. * * * The crime of felonious assault requires the offender to act `knowingly.' * * * In examining this issue, the Ninth District Court of Appeals found that a conviction involving the mental state of `knowingly' is sufficient to establish an intent to injure and trigger an intentional acts exclusion, as long as the exclusion is not restricted only to intentional acts, but also includes the expected results of one's acts. * * * Thus, a conviction for felonious assault, because it involves the mental state of `knowingly,' is sufficient to trigger an intentional acts exclusion." Baker, 2003-Ohio-1614, ¶ 9-10 (citations omitted). See, also, Campobasso v. Smolko (July 24, 2002), Medina App. No. 3259-M; Woods v. Cushion (Sept. 6, 2000), Summit App. No. 19896; Westfield Ins. v. Barnett, Noble App. No. 306,2003-Ohio-6278.
 {¶ 60} In the case sub judice, the clear and unambiguous language of the Grange policy states that it will not pay for loss or damage arising out of any act committed by or at the direction of any insured with intent to cause a loss. Matthew Gentry was an insured under the terms of the policy, and, as stated above, his intent to cause the loss *Page 11 
may be inferred from his intentional act of shooting a loaded firearm at Emmanuel Torres. Emmanuel Torres is without a doubt a sympathetic plaintiff, but the loss caused by Grange's insured is simply not covered under the terms of the Grange policy.
 {¶ 61} Furthermore, this Court has previously held that negligent supervision and negligent entrustment are not "occurrences" separate and apart from the underlying intentional tort but are derivative claims arising out of the intentional acts. See Offhaus v. Guthrie (2000), 140 Ohio App.3d 90, discretionary appeal not allowed in (2001),91 Ohio St.3d 1478.
 {¶ 62} We find the decision of the Supreme Court in Doe v.Shaffer, 90 Ohio St.3d 288, 2000-Ohio-186, to be inapplicable to the present case in that such case was limited to cases involving incidents of sexual molestation and insurance coverage for a non-molester's negligence.
 {¶ 63} Based on the foregoing, we find this assignment of error not well-taken.
 {¶ 64} Appellant's first assignment of error is overruled.
 II. {¶ 65} In their second assignment of error, Appellants argue the trial court erred in instructing the jury as to the theories of liability for Teana and Kevin Gentry. We disagree.
 {¶ 66} The trial court instructed the jury that Teana and Kevin Gentry's negligence could only be derivative of Matthew Gentry's negligence based upon negligent entrustment, negligent supervision or parental knowledge and consent to wrongdoing.
 {¶ 67} Appellant's argue that the trial court should have given an instruction which would have allowed the jury to find Teana and Kevin Gentry independently negligent. *Page 12 
 {¶ 68} When reviewing a trial court's jury instructions, the proper standard of review for an appellate court is whether the trial court's refusal to give a requested jury instruction constituted an abuse of discretion under the facts and circumstances of the case. State v.Wolons (1989), 44 Ohio St.3d 64, 68, 541 N.E.2d 443. The term "abuse of discretion" implies that the court's attitude is unreasonable, arbitrary or unconscionable. Blakemore v. Blakemore (1983), 5 Ohio St.3d 217, 219,450 N.E.2d 1140.
 {¶ 69} Ohio courts recognize three situations where parents' negligence results in liability in connection with the conduct of their child: (1) negligent entrustment of their child with "an instrumentality (such as a gun or car) which, because of the child's immaturity or lack of experience, may become a source of danger to others"; (2) "failure to exercise reasonable control over the child when the parent knows, or should know, that injury to another is a probable consequence"; and (3) consenting, sanctioning, or directing a child's known wrongdoing. Huston v. Konieczny, 52 Ohio St.3d at 217-218,556 N.E.2d at 509.
 {¶ 70} At trial, Teana and Kevin Gentry testified that Matthew was not allowed to use guns without his parents' express permission. They testified that the guns in their house were kept in a locked gun safe and that the keys to such safe were hidden. They further testified that prior to May 23, 2003, to their knowledge, Matthew had never used any of the guns without their permission.
 {¶ 71} The trial court gave the following instruction to the jury:
 {¶ 72} "INTRODUCTION. This is a negligence case. Matthew Gentry's negligence in discharging a firearm in the vicinity of the Plaintiff Emmanuel Torres has been *Page 13 
admitted and you are instructed to accept that admission in this case as a stipulated fact. The remaining issues in dispute may be summarized as follows:
 {¶ 73} "B. Were the Defendants, Teana or Kevin Gentry, negligent? A PARENT'S LIABILITY FOR ACTS OF A CHILD:
 {¶ 74} "A parent is not ordinarily liable for damages caused by a child's wrongful conduct. However, liability can attach when the injury committed by the child is the foreseeable consequence of a parent's negligent act. There are three ways in which a parent is liable for the acts of their children:
 {¶ 75} "1. NEGLIGENT ENTRUSTMENT: Parents may incur liability when they negligently entrust their child with an instrumentality which, because of the child's immaturity or lack of experience, may become a source of danger to others. The Plaintiffs bear the burden of proving by a preponderance of the evidence that Teana or Kevin Gentry entrusted a dangerous instrumentality to Matthew Gentry and that the entrustment of the dangerous instrumentality to Matthew Gentry was a proximate cause of some injury to Emmanuel Torres.
 {¶ 76} "Entrust" means more than giving the instrumentality to the child; it also encompasses cases where the parent allows the child to keep or have access to a dangerous instrumentality.
 {¶ 77} "To find that an item entrusted to a child is a dangerous instrumentality, you must find that the parent knew or should have known that the items would become a source of danger to others if entrusted to the child, given the child's age, judgment and experience, at the time of the entrustment. *Page 14 
 {¶ 78} "2. NEGLIGENT SUPERVISION: Parents have a duty to exercise reasonable control over their minor children in order to prevent harm to third persons, when the parents have the ability to control the child and they know, or should know, that injury to another is a probable consequence. To prevail on a negligent supervision claim, the Plaintiffs must prove by a preponderance of the evidence all of the following:
 {¶ 79} "The parent had the ability to exercise control over the child;
 {¶ 80} "The parent did not exercise the control he or she possessed over the child;
 {¶ 81} "The parent knew, or should have known, that his or her failure to exercise control over the child was likely to result in harm to someone, because the parent was aware of specific instances of prior conduct by the child which would have put a reasonably prudent person on notice that it was likely that the child would injure a person.
 {¶ 82} "3. PARENTAL KNOWLEDGE AND CONSENT TO WRONGDOING: A parent may be held liable in negligence when a parent knows of the child's wrongdoing and consents to it, directs it, or sanctions it."
 {¶ 83} Upon review, under the facts of this case, we find that the above instruction was proper and that the trial court did not abuse its discretion in giving such instruction to the jury.
 {¶ 84} Appellants' second assignment of error is overruled.
 III. {¶ 85} In their third assignment of error, Appellants argue the trial court erred in overruling its Motion to Show Cause. We disagree. *Page 15 
 {¶ 86} In the instant case, Appellants subpoenaed Gerald Billups, who was the only adult at home with Matthew Gentry on May 23, 2003, the day of the shooting. However, instead of bringing Mr. Billups to court, as ordered by the trial court, the Gentry's brought a videotape of Mr. Billups taken that morning showing him to be disoriented. Additionally, the Gentry's provided the trial court with a letter from Mr. Billups treating physician, stating:
 {¶ 87} "My patient, Gerald Billups, should not be able to testify about facts that happened two years ago. Mr. Billups cannot recall facts accurately due to his medical condition and he cannot sit for long periods of time."
 {¶ 88} Based on Mr. Billups condition as evidenced by the tape and the physician's letter, the trial court ruled that Mr. Billups had an adequate excuse for failing to comply with the subpoena and that no sanctions pursuant to Civ.R. 34(E) would issue.
 {¶ 89} Appellants then requested that the trial court play the video tape to the jury to show what Mr. Billups condition was on the day Matthew was left alone with him.
 {¶ 90} In response, the trial court denied such request, finding such video to be highly prejudicial.
 {¶ 91} The admission or exclusion of evidence rests within the sound discretion of the trial court, and will not be reversed on appeal absent an abuse of discretion. State v. Sage (1987), 31 Ohio St.3d 173,510 N.E.2d 343, paragraph two of syllabus. As stated above, an abuse of discretion connotes more than an error of law or judgment; it implies the court's attitude is unreasonable, arbitrary or unconscionable.Blakemore v. Blakemore (1983), 5 Ohio St.3d 217, 450 N.E.2d 1140. *Page 16 
 {¶ 92} Upon review, we find no abuse of discretion in the trial court's decision to not allow the videotape to be introduced at trial. There was no evidence that such videotape was an accurate representation of Mr. Billups condition two to three years previously.
 {¶ 93} We also find no abuse of discretion in the trial court's decision to not impose sanctions on Mr. Billups for his inability to appear.
 {¶ 94} Appellants' third assignment of error is overruled.
 IV. {¶ 95} In their fourth assignment of error, Appellants argue the trial court erred in not instructing the jury on the doctrine of res ipsa loquitur. We disagree.
 {¶ 96} The doctrine of res ipsa loquitur is not a substantive rule of recovery, but a rule of evidence that permits, but does not require, an inference of negligence when certain predicate conditions are proven.Jennings Buick v. City of Cincinnati (1980), 63 Ohio St.2d 167;406 N.E.2d 1385, 1387. Ordinarily, the negligence of a defendant must be affirmatively proven. Where the predicate conditions of res ipsa loquitur are established, the plaintiff is not required to offer affirmative evidence of the defendant's negligence, but may urge the finder of fact to infer the defendant's negligence from the predicate conditions. These include the defendant's exclusive control over the premises and the fact that the injury or damage occurring would not normally occur absent the defendant's negligence. The archetypical situation is a routine surgical procedure, in which the plaintiff is unconscious, under the influence of a general anesthetic, the defendant health-care practitioners have the exclusive control over the surgical theater, and it is established that the injury to the plaintiff would not normally occur in the *Page 17 
absence of negligence. Under these circumstances, it is reasonable to permit an inference of negligence, but the defendants may present affirmative evidence that they were not negligent, and the finder of fact is never required to draw the inference of negligence, but may find, to the contrary, that the defendants were not negligent.
 {¶ 97} Upon review, we find that Appellants failed to request an instruction as to res ipsa loquitur. The failure to request a jury instruction generally results in the waiver of the issue on appeal.Goldfuss v. Davidson (1997), 79 Ohio St.3d 116, 121, 679 N.E.2d 1099.
 {¶ 98} An appellate court may recognize waived error if it rises to the level of plain error. Goldfuss, at syllabus.
 {¶ 99} Crim.R. 52(B) states that "[p]lain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court." The Ohio Supreme Court has cautioned that "[n]otice of plain error under Crim.R. 52(B) is to be taken with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice." State v. Long (1978),53 Ohio St.2d 91, paragraph three of the syllabus.
 {¶ 100} Upon review, we find no obvious error and Appellant offers no evidence to support the giving of this instruction. *Page 18 
 {¶ 101} Appellants' fourth assignment of error is overruled.
 {¶ 102} For the reasons stated in the foregoing opinion, the judgment of the Court of Common Pleas of Ashland County, Ohio, is hereby affirmed.
 Wise, J. Farmer, P. J., and Delaney, J., concur. *Page 19 
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion, the judgment of the Court of Common Pleas of Ashland County, Ohio, is affirmed. Costs assessed to Appellants. *Page 1