DECISION AND JUDGMENT ENTRY
{¶ 1} Appellants appeal a summary judgment issued by the Lucas County Court of Common Pleas to an insurer in a dispute over policy coverage. For the reasons that follow, we affirm.
 {¶ 2} When appellant Kimberly Dolman and her husband, Alan, were living in Michigan, Alan Dolman was convicted of a sexual offense as a result of improper sexual *Page 2 
contact with a 14-year-old niece. Under Michigan law, Alan Dolman was required to register as a sexual offender as a result of his conviction. When the couple moved to Ohio, unsure as to whether the registration order applied outside Michigan, Alan Dolman did not register as a sexual offender.
 {¶ 3} In February 2002, the Dolmans took their then seven-year-old daughter to a nearby elementary school playground in their Toledo neighborhood. There, the Dolmans' daughter met June Doe, daughter of appellants John and Jane Doe. June Doe was the same age as the Dolmans' daughter and the two struck up a friendship. The girls exchanged telephone numbers.
 {¶ 4} A day later, with her mother's permission, the Dolmans' daughter invited June Doe to come to her home. As the visit progressed, the girls approached Kimberly Dolman, requesting that June spend the night. Kimberly Dolman consented and called Jane Doe for permission.
 {¶ 5} When Jane Doe picked up June the next day, the girl told her that, during the sleepover, Alan Dolman had "touched her privates." Alan Dolman was arrested and eventually entered an Alford plea to gross sexual imposition, a third-degree felony. The court accepted his plea, found him guilty and sentenced him to a two-year term of imprisonment. It also adjudicated him an habitual sexual offender.
 {¶ 6} On October 8, 2003, the Does initiated a civil lawsuit against the Dolmans, alleging that Alan Dolman intentionally engaged in non-consensual sexual activity with their daughter and that Kimberly Dolman, aware of her husband's prior unlawful sexual *Page 3 
contact with minors, negligently failed to supervise her husband while June Doe was in the home.
 {¶ 7} The Dolmans sought defense and indemnification from this suit under their homeowner's insurance policy issued by appellee, Allstate Insurance Company. Appellee responded by sending the Dolmans a letter of a reservation of defenses on the claim and instituting the declaratory judgment proceeding which underlies this appeal. Appellee sought a declaration that, under the terms of the Dolmans' homeowner's policy, it was not obligated to defend or indemnify against the Does' suit.
 {¶ 8} In the trial court, appellee moved for summary judgment, arguing that the claims were excluded from coverage by the policy's "Criminal or Intentional Act Exclusion" and that Kimberly Dolman's alleged negligence was not an insured "Occurrence" by the terms of the policy. Both the Dolmans and the Does opposed appellee's motion and filed their own cross-motions for summary judgment.
 {¶ 9} The trial court denied appellants' cross-motions and, relying on a "Joint Obligation Clause" in the coverage portion of the policy, granted summary judgment to appellee. Appellants appealed and we reversed on the ground that the trial court had predicated its decision on a ground not "specifically delineate[d]" by the parties. AllstateIns. Co. v. Dolman, 6th Dist. No. L-05-1281, 2006-Ohio-4134, ¶ 21, 22.
 {¶ 10} On remand, the matter was again submitted to the trial court on cross-motions for summary judgment. The court again concluded that coverage for Alan Dolman was precluded by the "Criminal and Intentional Act Exclusion." Moreover, the *Page 4 
court ruled that coverage for the negligence claim against Kimberly Dolman was excluded by the terms of the policy, reading the "Joint Obligation" clause and the "Criminal or Intentional Act Exclusion" clause in pari materia. Again, the trial court rendered summary judgment in favor of appellee and denied appellants' cross-motions.
 {¶ 11} From this judgment, appellants now bring this appeal. Appellant Kimberly Dolman sets forth the following three assignments of error:
 {¶ 12} "1. The trial court failed to construe the Joint Obligations Clause and the Criminal or Intentional Act Exclusion liberally in favor of Ms. Dolman and strictly against Allstate as it was required to do under Ohio law.
 {¶ 13} "2. The trial court improperly found the Joint Obligations Clause operates as a valid exclusion to coverage for the negligence claim asserted by Ms. Dolman.
 {¶ 14} "3. The trial court erroneously determined that the Criminal or Intentional Act Exclusion operates as a valid exclusion to coverage for the negligence claim asserted by Ms. Dolman."
 {¶ 15} Appellants Does set forth the following two assignments of error:
 {¶ 16} "1) The trial court erred in finding that the "Joint Obligations Clause" clearly and unambiguously put Allstate's insureds on notice that any act of any insured would be imputed to them all.
 {¶ 17} "2) The trial court erred in finding that the "Criminal Acts Exclusion" precludes coverage for Kimberly Dolman." *Page 5 
 {¶ 18} On review, appellate courts employ the same standard for summary judgment as trial courts. Lorain Natl. Bank v. SaratogaApts. (1989), 61 Ohio App.3d 127, 129. The motion may be granted only when it is demonstrated:
 {¶ 19} "* * * (1) that there is no genuine issue as to any material fact; (2) that the moving party is entitled to judgment as a matter of law; and (3) that reasonable minds can come to but one conclusion, and that conclusion is adverse to the party against whom the motion for summary judgment is made, who is entitled to have the evidence construed most strongly in his favor." Harless v. Willis Day Warehousing Co.
(1978), 54 Ohio St.2d 64, 67, Civ.R. 56(C).
 {¶ 20} The facts concerning the underlying claim are undisputed. It is only the application of the terms of the insurance contract to those facts that is at issue.
 {¶ 21} Contract interpretation is a matter of law, Alexander v.Buckeye Pipeline (1978), 53 Ohio St.2d 241, at paragraph one of the syllabus, reviewed de novo, Nationwide Mut. Ins. Co. v. Guman Bros.Farm (1995), 73 Ohio St.3d 107,108, subject to certain well established rules of construction.
 {¶ 22} "When confronted with an issue of contractual interpretation, the role of a court is to give effect to the intent of the parties to the agreement. We examine the insurance contract as a whole and presume that the intent of the parties is reflected in the language used in the policy. We look to the plain and ordinary meaning of the language used in the policy unless another meaning is clearly apparent from the contents of the policy. When the language of a written contract is clear, a court may look no further than *Page 6 
the writing itself to find the intent of the parties. As a matter of law, a contract is unambiguous if it can be given a definite legal meaning.
 {¶ 23} "On the other hand, where a contract is ambiguous, a court may consider extrinsic evidence to ascertain the parties' intent. A court, however, is not permitted to alter a lawful contract by imputing an intent contrary to that expressed by the parties.
 {¶ 24} "It is generally the role of the finder of fact to resolve ambiguity. However, where the written contract is standardized and between parties of unequal bargaining power, an ambiguity in the writing will be interpreted strictly against the drafter and in favor of the nondrafting party. In the insurance context, the insurer customarily drafts the contract. Thus, an ambiguity in an insurance contract is ordinarily interpreted against the insurer and in favor of the insured." (Citations omitted.) Westfield Ins. Co. v. Galatis, 100 Ohio St.3d 216,219-229; 2003-Ohio-5849, ¶ 11-13.
 {¶ 25} The trial court found legal significance in four provisions of the Dolmans' insurance policy: a provision captioned "insuring agreement," "coverage X" intentional acts exclusion, "coverage Y" intentional acts exclusion, and the definition of "occurrence."
 {¶ 26} The insuring agreement provides:
 {¶ 27} "In reliance on the information you have given us,Allstate agrees to provide the coverages indicated on the Policy Declarations. In return, you must pay the premium when due and comply with the policy terms and conditions, and inform us of any change in title, use or occupancy of the residence premises. *Page 7 
 {¶ 28} "Subject to the terms of this policy, the Policy Declarations shows the location of the residence premises, applicable coverages, limits of liability and premiums. The policy applies only two losses oroccurrences that take place during the policy period. The policy period is shown on the Policy Declarations. This policy is not complete without the Policy Declarations.
 {¶ 29} "The terms of this policy imposed joint obligations on the person named on the Policy Declarations as the insured and on that person's resident spouse. These persons are defined as you oryour. This means that the responsibilities, acts and omissions of a person defined as you or your will be binding upon any other person defined as you or your.
 {¶ 30} "The terms of this policy impose joint obligations on persons defined as an insured person. This means that the responsibilities, acts and failures to act of a person defined as an insured person will be binding upon another person defined as an insured person."
 {¶ 31} "`Occurrence'-means an accident, including continuous or repeated exposure to substantially the same general harmful conditions during the policy period, resulting in bodily injury or propertydamage." The policy defines "bodily injury" as, inter alia, "* * * physical harm to the body, including sickness or disease * * *."
 {¶ 32} The provision of the policy covering family liability, coverage "X," in material part provides:
 {¶ 33} "Losses We Will Cover under Coverage X: *Page 8 
 {¶ 34} "Subject to the terms, conditions and limitations of this policy, Allstate will pay damages which an insured person becomes legally obligated to pay because of bodily injury or propertydamage arising from an occurrence to which this policy applies, and is covered by this part of the policy.
 {¶ 35} "* * *
 {¶ 36} "Losses We Do Not Cover under Coverage X:
 {¶ 37} "1. We do not cover any bodily injury or property damage
intended by, or which may reasonably be expected to result from the intentional or criminal acts or omissions of, any insured person. * * *"
 {¶ 38} Coverage "Y" relates to "Guest Medical Protection" and provides, in material part:
 {¶ 39} "Losses We Will Cover under Coverage Y:
 {¶ 40} "Allstate will pay the reasonable expenses incurred for necessary medical, surgical, x-ray and dental services; ambulance, hospital, licensed nursing and funeral services * * *.
 {¶ 41} "Each person who sustains bodily injury is entitled to this protection when that person is:
 {¶ 42} "1. on the insured premises with the permission of aninsured person* * *."
 {¶ 43} Coverage "Y" excludes coverage for intentional or criminal acts in language identical to that used in coverage "X." *Page 9 
 {¶ 44} An insurer's duty to defend is determined by the allegations in the complaint. When the allegations in the complaint bring the action within the coverage of the policy, the insurer is required to defend regardless of the outcome of the action or its liability to the insured.Motorists Mut. Ins. Co. v. Trainor (1973), 33 Ohio St.2d 41, at paragraph two of the syllabus. Even when the complaint states a claim which is potentially or arguably within policy coverage or there is some doubt as to whether there is a theory of recovery within coverage, the insurer must defend. Willoughby Hills v. Cincinnati Ins. Co. (1984),9 Ohio St.3d 177, syllabus.
 {¶ 45} The parties agree that Alan Dolman is excluded from coverage, because it was his intentional and criminal acts that resulted in harm to June Doe. He is not a party to this appeal. The issue before us is whether appellee has a contractual duty to defend and indemnify Kimberly Dolman for what appellants Does allege was Kimberly Dolman's negligence in failing to supervise her husband's interaction with June Doe when Kimberly Dolman knew of his sexual propensity toward children.
 {¶ 46} Before the trial court, appellee argued that coverage should be excluded because the harm to June Doe was not an "occurrence" as defined by the policy. The trial court rejected this argument. FollowingOwners Ins. Co. v. Reyes (Sept. 30, 1999), 6th Dist. No. OT-99-017, the court properly concluded that a common meaning of "accident" ("an unfortunate event resulting from carelessness or ignorance" id., citing Merriam-Webster's Collegiate Dictionary (10 Ed.1996) 7), places the allegation of negligence within the policy meaning of an "occurrence." Nevertheless, the court found exclusion. *Page 10 
 {¶ 47} As it had in its ruling before the first appeal, the trial court concluded that the joint obligation clause imputes the intentional behavior of Alan Dolman to his wife. Moreover, the court found its conclusion with respect to the joint obligation clause, "* * * reinforced by the policy's Intentional or Criminal Acts Exclusion clause."
 {¶ 48} In the Does' first assignment of error, and Kimberly Dolman's first two assignments of error, appellants maintain that the trial court erroneously construed the "joint obligations" clause to impute Alan Dolman's intentional and criminal acts to his wife. They argue that the position of the clause in the insuring agreement may be reasonably interpreted to limit its effect to those things dealt with in the insuring clause: candor on the insurance application, timely payment of premiums, compliance with policy terms and the like. At the least, appellants insist, the clause's position in the document away from those provisions which are expressly captioned exclusions creates an ambiguity that must be construed in their favor. Appellants point to Allstate Ins.Co. v. Worthington (C.A.10, 1995), 46 F.3d 1005, 1009, C.P. v. AllstateIns. Co. (Alaska 2000), 996 P.2d 1216, 1227, and Wasik v. Allstate Ins.Co. (2004), 351 Ill. App.3d 260, 267, as instances wherein courts have found ambiguous materially the same language.
 {¶ 49} Citing cases it suggests hold the opposite, appellee contends that the fact that three courts have held the joint obligations clause ambiguous in similar circumstances does not make it so as a matter of law. In this respect, appellee is correct. By the same token, however, we cannot ignore the opinions of a state supreme court, a federal circuit court and a state intermediate appellate court. That these courts have *Page 11 
adopted appellants' ambiguity argument is certainly persuasive. Moreover, we conclude, appellants' argument is reasonable. The context in which the joint obligations clause appears is not conducive to a clear and unambiguous declaration that it is intended as an exclusion to coverage. Absent such clarity of purpose, we must agree with appellants that the clause is ambiguous and it must be construed in favor of coverage.
 {¶ 50} Accordingly, to the extent that appellant Kimberly Dolman's first and second assignments of error and appellants Does' first assignment of error assert that the trial court erroneously found exclusion in the joint obligations clause, they are correct. This, however, is not necessarily dispositive of this matter.
 {¶ 51} In their remaining assignments of error, appellants insist that the trial court also erred in giving effect to the intentional and criminal acts exclusion. According to appellants, the claim at issue is not a claim for an intentional or criminal act, but for the negligence of Kimberly Dolman when she failed to supervise her husband during June Doe's visit.
 {¶ 52} Applying the rules of construction, we first look to the language of the insurance contract for the intention of the parties. The exclusionary clauses of both coverage "X" and "Y" state that the agreement does not cover damage, "* * * intended by, or which may reasonably be expected to result from the intentional or criminal acts or omissions of, any insured person." Citing Allstate Ins. Co. v.Lobracco (Nov. 24, 1992), 10th Dist. No. 92AP-649, 92AP-650, appellee insists that the effect of these clauses is clear: if anyone insured under the policy commits an intentional or criminal act, there is *Page 12 
no coverage for any damages resulting therefrom. Alan Dolman committed a criminal and an intentional act. He was an insured under appellee's policy; therefore, any damages attributable to his acts are not covered. The harm to June Doe was attributable to Alan Dolman's criminal acts, so all coverage for that damage disappears.
 {¶ 53} Appellants argue that there can be more than one cause of injury. Citing the Alaska case, C.P. v. Allstate Ins. Co, supra, appellants maintain that the exclusionary clauses should be read to exclude coverage only for that damage attributable to Alan Dolman's conduct, not the negligent conduct of Kimberly Dolman.
 {¶ 54} Damage from tortious conduct may have multiple causations. See Restatement of the Law 2d, Torts (1977) 324, Section 879, Comment a. The exclusions, however, go not to causation, but to damages. By the plain language of the exclusions, if bodily injury or property damages result from the intentional or criminal acts of anyone insured under the policy, there is no coverage. Since June Doe's injury is undisputedly the result of the criminal acts of an insured, Alan Dolman, there is no coverage under this policy. Accordingly, appellants' remaining assignments of error are not well-taken.
 {¶ 55} On consideration whereof, the judgment of the Lucas County Court of Common Pleas is affirmed. Appellant Kimberly Dolman and appellants Does are ordered to share equally the costs of this appeal pursuant to App.R. 24. Judgment for the clerk's expense in preparation of the record, fees allowed by law, and the fee for filing the appeal is awarded to Lucas County.
 JUDGMENT AFFIRMED. *Page 13 
A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. See, also, 6th Dist.Loc.App.R. 4.
Mark L. Pietrykowski, P.J., Arlene Singer, J., Thomas J. Osowik, J., Concur. *Page 1