OPINION. *Page 2 
{¶ 1} In this case, we are asked to determine whether a homeowners' insurance policy and an umbrella policy obligated the issuing insurance company to defend and indemnify when its insureds were sued for negligence relating to the intentional and criminal conduct of their child, also an insured. While the issue is close, we hold that coverage was afforded under the policies.
 Felonious Assault and Attempted Murder Result inLitigation {¶ 2} Benjamin White, who was then 17 years old, attempted to kill Casey Hilmer. He grabbed the 13-year-old while she was jogging, dragged her into the woods, and stabbed her repeatedly in the side and neck. After this attack, White pleaded guilty to attempted murder and felonious assault, and was sentenced to ten years in prison.
 {¶ 3} Casey Hilmer and her parents sued Benjamin White and his parents, Lance and Diane White. In that lawsuit, the Hilmers claimed that Lance and Diane White had been negligent for failing to properly supervise their son and for entrusting him with a dangerous instrument. That case proceeded to a jury trial. According to a jury interrogatory, Lance and Diane White had been negligent and their negligence had proximately caused injury to the Hilmers, though the manner of the negligence was not specified. The jury awarded $6.5 million in compensatory damages and determined that Lance and Diane White were responsible for 70% of that amount.
 {¶ 4} At the time of the attack, the Whites had two homeowners' insurance policies and two umbrella policies. One of the homeowners' policies was issued by defendant-appellee Federal Insurance Company. One of the umbrella policies was *Page 3 
issued by defendant-appellee Pacific Indemnity Company. Both Federal and Pacific were members of the Chubb Group of Insurance Companies (collectively "Chubb"). The remaining policies were issued by plaintiff-appellant, Safeco Insurance Company of America.
 {¶ 5} Shortly after the Hilmers' lawsuit was filed, Safeco filed a declaratory-judgment action claiming that it owed neither a duty to defend nor a duty to indemnify the Whites. In that suit, Safeco also asked the trial court to determine the priority of coverage between the two policies that it had issued and the two issued by Chubb. During this litigation, Chubb withdrew its opposition to coverage for "the negligence claims and the jury verdict against Lance and Diane White."
 {¶ 6} Safeco filed a motion for summary judgment, as did Lance and Diane White. While the motions were pending, the declaratory-judgment action was consolidated with the underlying suit filed by the Hilmers. The trial court considered the arguments and found that the intentional-tort exclusions in the Safeco policies were rendered ambiguous by the "Severability of Insurance" language found in each policy. The trial court then concluded that Safeco owed coverage on a pro-rata basis with the Chubb policies and set forth the amounts owed under each policy. The trial court granted the motion of Lance and Diane White for summary judgment and denied Safeco's motion. Chubb settled with Lance and Diane White and took their place in the litigation with Safeco.
 The Trial Court's Judgment Was Sufficient {¶ 7} As an initial matter, Safeco argues that the decisions made by the trial court were insufficient to resolve all the matters presented to it by the declaratory-judgment action. We disagree. The trial court was asked to determine if coverage *Page 4 
was owed to the Whites and the priority of coverage between the Safeco and the Chubb policies. The trial court addressed those issues, declared the rights of the parties, and set forth the amounts owed under each insurance policy. Since the trial court decided all the issues before it, we overrule Safeco's first assignment of error.
 The Issue of Coverage {¶ 8} In its second assignment of error, Safeco argues that the trial court improperly determined that it owed coverage to Lance and Diane White.[1] To address this issue, we begin by analyzing whether such coverage was precluded as a matter of public policy in Ohio. We conclude that it was not.
 Ohio Public Policy — Doe and Automobile Club Ins. Co. {¶ 9} Both Safeco and Chubb refer to the Ohio Supreme Court's decision in Doe v. Schaffer.[2] In Doe, the court held that "Ohio public policy permits a party to obtain liability insurance coverage for negligence related to sexual molestation when that party had not committed the act of sexual molestation."[3] While some courts have limited the application of this holding to cases that actually involve sexual molestation,[4] we conclude that such a distinction is unjustified.
 {¶ 10} One month after the Doe decision was released, the Ohio Supreme Court released the decision in Automobile Club Ins. Co. v.Mills.[5] Neither party has referred to Automobile Club in their briefs. In that case, the insured mother sought coverage for a *Page 5 
claim of negligent supervision and failure to warn after her son had killed his fianc é .[6] The son and his fianc é both lived in the mother's residence, and the son was an insured under the mother's homeowners' policy.[7] The mother sought a defense and indemnification from the insurance company that had issued the homeowners' policy.[8]
The court of appeals held that the mother's negligent conduct did not fall within the definition of an "occurrence" under the policy.[9] The court concluded that "the `occurrence' here is Donald's act of murder," and that Ohio public policy prohibited the issuance of insurance to provide liability coverage to indemnify for damages flowing from intentional conduct or liability coverage resulting therefrom.[10]
 {¶ 11} In a one-sentence decision, the Ohio Supreme Court reversed that decision on the authority of Doe.[11] Reading this sentence in the context of the appellate decision that preceded it, we cannot conclude that the Doe public-policy holding is limited to cases involving sexual molestation. We hold that Ohio public policy permits a party to obtain liability insurance coverage for negligence related to intentional conduct when that party does not commit the intentional act.
 {¶ 12} But holding that such coverage is permitted by public policy is not the same as holding that coverage is available under the policies in this case. We agree with Safeco that Doe (and Automobile Club) leave room for such coverage to be excluded by the express terms of the policies.[12] The question becomes whether the policies issued by Safeco did so. *Page 6 
 The Policy Language {¶ 13} The Safeco homeowners' policy named Lance and Diane White as insureds. The term "insured" also included relatives if they were residents of the household. The policy provided liability coverage for a claim or suit against "an insured for damages because of bodily injury or property damage caused by an occurrence to which this coverage applies * * *." An "occurrence" was defined as "an accident * * * which results in bodily injury * * *." The policy excluded coverage for bodily injury "which is expected or intended by an insured or which is the reasonably foreseeable result of an act or omission intended by an insured * * *." Additionally, bodily injury "arising out of an illegal act committed by or at the direction of an insured" was also excluded.
 {¶ 14} The Safeco umbrella policy named Lance White as an insured. The term "insured" also included any member of the named insured's household. The policy similarly provided liability coverage for an "occurrence." "Occurrence" was similarly defined — "an accident * * * which results, during the coverage period, in bodily injury * * *." The policy carried several exclusions, including "any injury caused by a violation of penal law or ordinance committed by or with the knowledge or consent of any insured." The policy also excluded from coverage "any act or damage which is expected or intended by any insured, or which is the foreseeable result of an act or omission intended by any insured * * *."
 {¶ 15} Both policies contained the following "Severability of Insurance" condition: "This insurance applies separately to each insured. This condition shall not increase our limit of liability for any one occurrence." *Page 7 
 Occurrence Means Accident — But What Is An Accident? {¶ 16} Safeco first argues that the attack on Casey Hilmer was not an "occurrence" under its policies. An "occurrence" was defined in both policies as an "accident." Safeco contends that the attack was not an accident.
 {¶ 17} At least one appellate district has agreed with Safeco's position. In Torres v. Gentry, the Fifth Appellate District held that "negligent supervision and negligent entrustment are not `occurrences' separate and apart from the underlying intentional tort but are derivative claims arising out of the intentional acts."[13]
 {¶ 18} But other districts have renounced this approach. In the most recent decision on the topic, the Sixth Appellate District held that coverage was owed.[14] In that case, a wife was sued for negligence after her husband had molested a neighbor's child. The wife sought coverage under the couple's homeowners' policy. The court held that "a common meaning of `accident' (`an unfortunate event resulting from carelessness or ignorance') places the allegation of negligence within the policy meaning of an `occurrence.'"[15] The Eleventh Appellate District has reached the same conclusion.[16]
 {¶ 19} We agree with the Sixth and Eleventh Appellate Districts. The problem with the derivative analysis embraced by the Fifth Appellate District is that it runs counter to the rationale of the Ohio Supreme Court in Doe. The Doe court *Page 8 
stated that "the intentions of the molester are immaterial to determining whether the allegedly negligent party has coverage. * * * [T]he critical issue is the nature of the intent — inferred or otherwise — of the party seeking coverage."[17] Therefore, we conclude that when an insurance policy defines an "occurrence" as an "accident," that definition will include allegations of negligence even when the negligence relates to the failure to prevent intentional conduct.
 Severability-of-Insurance Clause Creates Ambiguity {¶ 20} Having concluded that the negligence of Lance and Diane White constituted an "occurrence" under the Safeco policies, we must now determine if coverage was otherwise excluded by the terms of the policies. We conclude that it was not.
 {¶ 21} Safeco's homeowners' policy excluded bodily injury "which is expected or intended by an insured * * *" and bodily injury "arising out of an illegal act committed by or at the direction of an insured." The umbrella policy excluded "any injury caused by a violation of penal law or ordinance committed by or with the knowledge or consent of any insured" and "any act or damage which is expected or intended by any insured, or which is the foreseeable result of an act or omission intended by any insured * * *." Each policy also contained a condition that "[t]his insurance applies separately to each insured." We agree with Chubb that, at the very least, this language created an ambiguity when read in conjunction with the foregoing exclusions. *Page 9 
 {¶ 22} In Wagner v. Midwestern Indemn. Co.,[18] the court held that in "determining whether the parties contemplated joint or several coverage, the terms of the contract are to be considered, and where provisions of a contract of insurance are reasonably susceptible of more than one interpretation, they will be construed strictly against the insurer and liberally in favor of the insured."[19]
 {¶ 23} In Havel v. Chapek, the Eleventh Appellate District held that coverage was still afforded for the negligence of an insured — even when the injury was caused by the intentional conduct of another insured. In that case, the parents were sued after their son had killed his girlfriend. The parents sought coverage from their homeowners' policy, which contained exclusions that were similar to those at issue in this case.[20]
 {¶ 24} The Havel court concluded that applying the intentional-conduct exclusions to a negligent insured "is contrary to the Ohio Supreme Court's holding under Doe and is inconsistent with the Supreme Court's holding in Automobile Club Ins. Co. v. Mills * * *. Doe distinguished its analysis as to any intentional act of an insured, but permitted appellants to obtain coverage for negligence related to the sexual molestation when they did not commit the molestation. * * * Each insured's individual coverage under the Grange policy must be applied separately to each insured. The physical abuse and bodily injury exclusion in question only applies to an insured who actually commits an intentional act — in this case, Jeremy, who committed murder. The exclusion does not apply to potentially innocent negligent insureds, such as Jeremy's parents, who may have negligently contributed to the injury through failure to warn or protect. Pursuant to the holdings inDoe and Automobile Club, Jeremy's parents have coverage and Grange has an absolute duty *Page 10 
to defend under the policy."[21] The court rejected the position of the dissenting judge, noting that the "dissent would deny coverage for the negligent acts of an innocent insured, due to the intentional, criminal act of another insured. In effect, the dissent would deny coverage for the very purpose for which insurance is purchased, i.e., negligence resulting in bodily injury."[22]
 {¶ 25} We agree with this analysis. When confronted with an issue of contractual interpretation, a court must give effect to the intent of the parties to the agreement.[23] The Doe court established that, in the context of negligence tied to sexual molestation, "[w]hile it is indeed true that the average person would likely find liability coverage for the intentional tort of sexual molestation loathsome, the same rationale cannot extend to negligence. The average person would no doubt find such coverage to be the purpose for which he obtained insurance."[24]
 {¶ 26} When determining coverage, we examine the insurance contract as a whole and presume that the intent of the parties is reflected in the language used in the policy.[25] When reading the severability condition in conjunction with the exclusions in the Safeco policies, we hold that the exclusions are ambiguous. Construing that ambiguity in favor of the insureds, in light of the policyholder expectation recognized in Doe, we hold that the exclusions for intentional conduct do not apply to insureds who have been merely negligent, when the policies contain language indicating that coverage applies "separately to each insured." *Page 11 
 {¶ 27} We acknowledge the admonition of the Ohio Supreme Court inWestfield v. Galatis that this "rule [of construction] will not be applied so as to provide an unreasonable interpretation of the words of the policy."[26] But we conclude that our interpretation is reasonable in light of Doe. For these reasons, we overrule Safeco's second assignment of error.
 Conflicts Sua Sponte Recognized {¶ 28} Having examined the decisions in our sister districts, we find that our decision in this case is in conflict and, on our own motion, certify the conflicts to the Ohio Supreme Court for its consideration.
 {¶ 29} First, our holding that the negligence of the insureds constitutes an "occurrence" conflicts with the holding in Torres v.Gentry from the Fifth Appellate District, which has held that "negligent supervision and negligent entrustment are not `occurrences' separate and apart from the underlying intentional tort but are derivative claims arising out of the intentional acts."[27] We therefore certify the following question for review: "When an insurance policy defines an `occurrence' as an `accident' that results in bodily injury, does an `occurrence' include injuries that result from an intentional act when the insureds seeking coverage are claimed to have been negligent in relation to that intentional act?"
 {¶ 30} We also conclude that our holding regarding the effect of the "Severability of Insurance" language conflicts with the holding inUnited Ohio Ins. Co. v. Metzger,[28] which held that the existence of a severability provision did not *Page 12 
change the analysis or create an ambiguity with respect to enforcement of exclusionary language referring to "an insured."[29] We therefore certify the following question for review: "When an insurance policy excludes an injury `which is expected or intended by [an or any] insured * * *'; injuries `arising out of an illegal act committed by or at the direction of an insured'; or `any injury caused by a violation of penal law or ordinance committed by or with the knowledge or consent of any insured," do the exclusions become ambiguous when read in conjunction with a `Severability of Insurance' condition, in light of the announced expectation by policyholders that their negligence will be covered?"
 Conclusion {¶ 31} For the reasons given above, the judgment of the trial court is affirmed.
Judgment affirmed.
HENDON, J., concurs.
PAINTER, P.J., concurs separately.
[1] The trial court concluded that issues of fact remained regarding coverage for Benjamin White. While this decision is curious, since he pleaded guilty to attempted murder and felonious assault and since Benjamin White conceded in his answer that he was not seeking coverage under the Safeco policies, that aspect of the trial court's decision has not been appealed and is not before us.
[2] 90 Ohio St.3d 388, 2000-Ohio-186, 738 N.E.2d 1243.
[3] Id. at syllabus.
[4] See, e.g., Torres v. Gentry, 5th Dist. No. 06 COA 038,2007-Ohio-4781, ¶ 61 ("We find the decision of the Supreme Court inDoe v. Shaffer * * * to be inapplicable to the present case in that such case was limited to cases involving incidents of sexual molestation and insurance coverage for a non-molester's negligence.").
[5] 90 Ohio St.3d 574, 2001-Ohio-21, 740 N.E.2d 284.
[6] Automobile Club Ins. Co. v. Mills (July 10, 2000), 12th Dist. Nos. CA-99-07-064 and CA-99-07-070.
[7] Id.
[8] Id.
[9] Id.
[10] Id.
[11] Automobile Club Ins. Co. v. Mills, 90 Ohio St.3d 574,2001-Ohio-21, 740 N.E.2d 284.
[12] See, e.g., Lehrner v. Safeco Insurance/American States Ins.Co., 171 Ohio App.3d 570, 2007-Ohio-795, 872 N.E.2d 295, ¶ 46 ("Shaffer addressed public policy, not policy language. The fact that public policy allows the purchase of insurance for negligence related to sexual molestation says nothing about whether the Utica policy exclusion applies in this case.").
[13] Torres v. Gentry, 5th Dist. No. 06 COA 038, 2007-Ohio-4781, ¶ 61, citing Offhaus v. Guthrie (2000), 140 Ohio App.3d 90,746 N.E.2d 685, discretionary appeal not allowed (2001), 91 Ohio St.3d 1478,744 N.E.2d 775.
[14] Allstate Ins. Co. v. Dolman, 6th Dist. No. L-07-1113,2007-Ohio-6361.
[15] Id. at ¶ 46, citing Owners Ins. Co. v. Reyes (Sept. 30, 1999), 6th Dist. No. OT-99-017 (internal citations omitted).
[16] See Havel v. Chapek, 11th Dist. No. 2004-G-2609, 2006-Ohio-7014, ¶ 33, ("This court, consistently with other courts, has defined `accident' as `an unusual, fortuitous, unexpected, unforeseen or unlooked for event, happening or occurrence.'"), citing Chepke v.Lutheran Brotherhood (1995), 103 Ohio App.3d 508, 511, 660 N.E.2d 477, and Randolf v. Grange Mut. Cas. Co. (1979), 57 Ohio St.2d 25, 29,385 N.E.2d 1305 ("the word `occurrence,' defined as an `accident,' was intended to mean just that-an unexpected, unforeseeable event").
[17] Doe, 90 Ohio St.3d at 393, 394, 2000-Ohio-186, 738 N.E.2d 1243, citing Preferred Mut. Ins. Co. v. Thompson, 23 Ohio St.3d 78, 81,491 N.E.2d 688, and Transamerica Ins. Group v. Meere (1984), 143 Ariz. 351,356, 694 P.2d 181.
[18] 83 Ohio St.3d 287, 1998-Ohio-111, 699 N.E.2d 507.
[19] Id. at 291 (internal quotations and citations omitted).
[20] Havel at ¶ 35.
[21] Id. (citations omitted).
[22] Id. at ¶ 37.
[23] Westfield v. Galatis, 100 Ohio St.3d 216, 2003-Ohio-5849,797 N.E.2d 1256, ¶ 11, citing Hamilton Ins. Serv., Inc. v. Nationwide Ins.Cos., 86 Ohio St.3d 270, 273, 1999-Ohio-162, 714 N.E.2d 898, citingEmployers' Liab. Assur. Corp. v. Roehm (1919), 99 Ohio St. 343,124 N.E. 223, syllabus.
[24] Doe, 90 Ohio St.3d at 395, 2000-Ohio-186, 738 N.E.2d 1243.
[25] Westfield at ¶ 11, citing Kelly v. Med. Life Ins. Co. (1987),31 Ohio St.3d 130, 509 N.E.2d 411, paragraph one of the syllabus.
[26] Westfield at ¶ 14, citing Morfoot v. Stake (1963),174 Ohio St. 506, 190 N.E.2d 573, paragraph one of the syllabus.
[27] Torres v. Gentry, 5th Dist. No. 06 COA 038, 2007-Ohio-4781, ¶ 61, citing Offhaus v. Guthrie (2000), 140 Ohio App.3d 90,746 N.E.2d 685, discretionary appeal not allowed (2001), 91 Ohio St.3d 1478,744 N.E.2d 775.
[28] (Feb. 8, 1999), 3rd Dist. No. 12-98-1; see, also, Lehrner v.Safeco Insurance/American States Ins. Co., 171 Ohio App. 3d 570,2007-Ohio-795, 872 N.E.2d 295, ¶ 53 ("The separation-of-insureds clause makes the coverage actually provided by the policy applicable to all insureds equally. It does not purport to create coverage where a policy exclusion applies.").
[29] Id.